## Theodore H. Hinchman and another v. Reuben Town and others.

A. sued out of the Circuit Court an attachment, which was levied upon the property of his debtor. At the time of suing it out, only about eleven dollars of his demand was due, but he subsequently recovered judgment for the whole amount on the debtor's admission. B. also sued out an attachment against the debtor, which was levied on the same property after that of A., but he recovered judgment first, and caused execution to be levied on the property. B. then filed a bill in Chancery to have his lien decreed to have priority over that of A. It was held:

1. That complainant by his attachment acquired a lien on the property, subject only to any lien which A. could lawfully hold under the statute; and that this lien of complainant could not be affected by a subsequent recovery of a judgment to which he was not a party.

2. That he had a right to show, notwithstanding A.'s judgment, that the demand for which it was rendered was not due when the attachment was sued out.

3. That less than a hundred dollars being due A. when his attachment was sued out, the Circuit Court had no jurisdiction; and the whole amount of A.'s judgment was postponed to B.'s lien.

Complainant included in his judgment a demand which he believed to be due, but which was not so. It was held that he did not, by so including it, debar himself of the right to have his priority protected in equity as to the amount included which actually was due.

*Held further,* that the question of priority between A.'s judgment and that portion of B.'s which was not due when his attachment was sued out, must be determined by the levy of execution; and B.'s being first levied, gave him the first lien.

A chattel mortgage was given in evidence which purported to be given to secure a certain promissory note. A note of the description was not produced, but one of a different date was offered as the one designed to be secured It was held that the filing of the mortgage was not notice of any other claim than the one described in it.

*Heard October 15th and 16th. Decided October 21st.*

Appeal in Chancery from Wayne Circuit. The case is fully stated in the opinions.

*Newberry & Pond,* for complainants:

There can be no doubt of complainants' right to the

relief prayed if the evidence shows the demand of defendants not to have been due when their attachments were levied. *Drake on Attach.* 273–275; *Chandler v. Hale,* 3 *Mich.* 531; 3 *Humph.* 431.

The evidence was conclusive that the sale by defendants was upon a four months' credit. The bills of sale have all the force of written contracts, and the burden to overturn them is upon defendants:—24 *Vt.* 55; 15 *Ala.* 317.

Complainants' judgment is not invalidated by their including in it a sum owing but not actually due:—7 *Cush.* 587; 15 *Conn.* 504; 9 *Fost.* 237.

*Jerome & Swift* and *A. B. Maynard* for defendants:

If a party comes into a court of equity, he must come with clean hands. The court will not aid a party who is guilty of the same fraud which he charges upon the other party. The facts all show collusion between complainants and Young, and it is insisted that their conduct avoided their lien as to subsequent attaching creditors:—12 *Pick.* 383; 7 *Greenl.* 348; 3 *Met.* 49.

By the attachment of Town, Smith and Shelden, they acquired a lien on Young's property; the complainants attached the property subject to this lien, and they are so far in privity with Young, that the judgment is as binding upon them as upon him, unless it be shown that the judgment was fraudulently or collusively rendered.

If Young had not appeared, of course the judgment would not, by the provisions of our statute, have been conclusive upon Young, and therefore not upon the complainants, and herein this case differs from the case of *Hale v. Chandler.* That complainants can only impeach the judgment of Town, Smith and Shelden against Young for fraud, is shown by the following authorities:—7 *Pick.* 550; 8 *Pick.* 168; 5 *Greenl.* 188; 18 *Penn.* 482; 16 *Penn.* 18; 5 *Johns. Ch.* 555; 6 *Ibid.* 236; 4 *Ibid.* 329; 24 *Mo.* 44; 8 *W. & S.* 387; 13 *S. & R.* 199; 5 *W. & S.* 473; 7 *Cush.* 587; 2 *Comst.* 269; 26 *Me.* 411.

And in *Hale v. Chandler*, the Court seems to base its decision upon the fraudulent intent of the plaintiffs, and their knowingly endeavoring, by their judgment, to take money which did not belong to them.

But supposing that the Court entertains a different view of the law from that we have contended for, and that the question is not whether there was fraud, but whether in point of fact the debt of Young to Town, Smith & Shelden was due when their suit was commenced, must it not be a clear case to induce the Court to interfere with their judgment? We have not been able to find a case where the courts have interfered, when there was any doubt as to the question whether the debt was due or not.

And in one case we find it expressly laid down, that it must be clearly shown that the debt was not due.—4 *Zabr.* 150.

And the admissions of Young are competent testimony on this point.—5 *Pick.* 410; 12 *Pick.* 199.

CAMPBELL J.:

Complainants and the defendants Town, Shelden and Smith, upon the 15th day of August 1859, sued out attachments against one Edwin Young, in the Circuit Court for the county of Washtenaw. The defendants' writ was served first. Judgment was subsequently obtained, upon the admission of Young, in each case.

Complainants filed their bill to obtain priority over defendants, on the ground that, when the latter sued out their attachment, this claim was not due; it having, as was alleged, arisen out of sales of goods on a four months credit, which had not expired. Defendants answered, claiming upon facts set forth that their demand was due, and that, on the other hand, complainants had attached prematurely on a demand all of which was not then due.

Upon comparison of the testimony we are entirely satisfied that the goods sold by defendants were sold on four

months credit, which had not elapsed at the time of the attachment. There is no real conflict in the testimony on this point, although it is quite probable defendants may have misapprehended their legal, position. It appears that Young applied to defendants to purchase goods, and purchased a bill consisting of part what were termed cash goods, and part time goods, which were billed separately. That time goods were usually sold at four months credit, and in this case were marked on the separate bill and charged on the books at four months, while Young paid for the cash goods at the time. Other items were purchased by order subsequently, which were charged separately in the same manner, and of which similar bills were forwarded. Mr. Shelden, who sold the goods, testified that when time goods were sold for cash, five per cent was deducted, which was not deducted in this case. The facts relied on to show there was no credit are stated by Mr. Shelden as follows: "Young said he wanted to buy a bill of goods of us, and said he wanted to pay for them right along, and had nothing to do with his money but to pay for his goods in that way. Nothing was said about his buying or having the goods at four months, and he did not say he wanted them on any such time, except this. He asked me if we were going to charge him interest. I told him no, if he paid within four months." He then explained the ordinary differences between time and cash goods, where no special contract was made, and that the clerk who made the bills was not informed of the arrangement. That clerk was not sworn in the case. James S. Johnson, who was sent by Shelden to obtain admissions from Young, stated to the latter that Shelden said Young was to commence paying for the goods right away, and continue to pay until the whole bill was fully paid, and that, if the bill was paid within four months, Young *was to have the benefit of interest off.* Young also states that if he paid within four months he was to have interest off.

Taking any of these statements, they show conclusively that the sale was a credit sale. And if a credit sale at all, it was a sale at four months. We do not regard the witnesses as in any way contradicting each other on this point. Mr. Shelden was mistaken in regarding the facts, as he details them, as making a cash sale. It is very evident Young was not to be regarded as in default for not paying within four months.

When defendants issued their attachment there was due only eleven dollars and twenty-five cents; and they had no right to levy an attachment for any greater sum. *Hale v. Chandler*, 3 *Mich.* 531. That sum was not within the jurisdiction of the Circuit Court. *Same case.*

It is claimed, however, that, inasmuch as Young permitted judgment to go against him for the full amount, no proceeding can now be had by other creditors to go behind that judgment, to inquire whether it was founded on a claim not due at the date of the attachment. This was fully considered in the case of *Hale v. Chandler*, and we shall not therefore discuss it at length. But the argument rests upon grounds entirely fallacious. Such a judgment is binding, perhaps, as between the parties. But it was rendered after complainants had levied their attachment, and thus obtained a legal statutory advantage; and there is no principle of law upon which such an interest once obtained can be divested, by proceedings to which they are not parties. They had a lien on the property attached, to the amount of their own lawful demands then due, subject only to any lien which defendants could lawfully hold under the statute. Young could neither increase nor diminish the lien of any party.

A portion of the demand of complainants was not due when their suit was commenced, and defendants insist that, by reason of including this in the judgment, complainants are guilty of a fraud, and cannot therefore come into a court of equity for relief. Where an attachment is made

for a false claim, with the design of defrauding others, those who are wronged may perhaps avoid it entirely, although good in part. Upon the extent of this rule we express no opinion. But when there is no fraudulent intention, and the act is done in good faith, equity will not punish a party because of his conduct, by causing him to forfeit what lawfully belongs to him, provided it can be ascertained and apportioned. Acts termed constructively fraudulent, are so called from their being injurious to the rights of others, and do not of necessity involve actual fraud. If a party entitled to a lien for one hundred dollars claims it for two hundred dollars, a subsequent claimant obtains complete justice by having the excess over one hundred cut off; because he is then placed where the former had a right to place him originally. Where more is cut off he is made an actual gainer by punishing his adversary. In the case before us, complainants honestly regarded their debt as fully due; and it was due by their mode of averaging credits. But as Young had no knowledge of that rule brought home to him, so as to make it a part of his bargain, it could not apply to anticipate the maturity of future instalments. Complainants cannot obtain any relief on the portion of their claim which was thus anticipated. But they are entitled to relief upon the remainder. This proceeding is merely to obtain the benefit of a lien or security, and it does not depend upon or affect the validity or amount of the judgment as against Young, any more than if it were a fund set apart by contract for its part payment. Complainants are entitled to a lien to the amount of their debt actually due when the attachment was levied.

Defendants further claim that they are entitled to a priority of payment out of the funds realized from the attached property, by reason of a prior chattel mortgage for $1,200 executed by Young to one Leadbeater, and by him assigned to them. The testimony shows this claim to be unfounded. It does not appear that the mortgage

covered any of the attached property. But, aside from this, the mortgage was given to secure a note of $1,200, dated July 11th 1859. No such note is shown to exist. A note of the same amount dated one month previous was produced, but Leadbeater testifies he cannot say it was given with the mortgage. It is certainly not within its terms, and the record of the mortgage is no notice of such a claim. It could not therefore defeat the attachment.

Complainants are entitled to a preference over defendants, to the amount of their judgment, after deducting $136.83 with interest from the date of the attachment, which was August 15, 1859.

The decree below must be reversed, with costs, and a new decree entered as above directed. As the sum realized does not exceed the preferred claim, it is unnecessary to make any further directions.

MANNING J. concurred.

MARTIN CH. J.:

I am inclined to believe the testimony of Shelden in preference to that of Young, and to hold that the goods were not sold by the defendants to Young upon a credit of four months, nor of any particular time. The positive testimony of Shelden is to this effect, and that of Young does not shake or weaken it, while the conduct of the latter very greatly impairs his credibility. But were it otherwise, if the conduct of the defendants was an actual or constructive fraud upon the complainants, theirs was equally so upon the defendants, and neither is entitled to the aid of equity against the other. We do not sit here to balance frauds and give judgment in favor of the party whose fraud is the least.

I think the decree of the Court below should be affirmed.

*Decree reversed.*

HINCHMAN *v.* TOWN.

*Mr. Swift* called the attention of the Court to facts which had escaped notice, which showed that there would be a surplus of property after the satisfaction of complainants' lien under the foregoing opinion.

CAMPBELL J.:

As it appears upon investigation that there is a balance of property remaining after applying enough to cover complainants' lien under their attachment, the question arises how it shall be distributed. This must depend upon the priority of the rights arising from the judgments and executions against Young. It appears that complainants obtained judgment for their whole claim upon Young's confession, and issued execution upon it against this property, in September 1859: while the defendants obtained Young's admission, and entered judgment and sued out execution, in the month of January thereafter. Complainants, therefore, have a clear legal priority for the whole amount of their judgment; and nothing can be applied on that of defendants until the former is satisfied. The decree must be framed accordingly.

MANNING J. concurred.

CHRISTIANCY J. did not sit in the case.