STEPHEN BRUSH.V. WILLIAM H. SWEET AND WILLIAM BINDER.

*Right to have a conveyance set aside for fraud not transferable.*

The right to have a conveyance set aside on repayment is a pure equity, and if it can be transferred the transferee should sue in his own name and the bill should set forth his interest and right to appear as complainant.

The right to sue in equity to have a conveyance set aside for fraud is not assignable.

Appeal from Saginaw. Submitted January 18. Decided April 9.

BILL TO SET ASIDE CONVEYANCE. Dismissed. Complainant appeals.

*Benton Hanchett* for complainant.

*W. A. Clark* and *W. H. Sweet* for defendants.

GRAVES, J. This case comes before the court on an appeal against the dismissal of the bill. The suit was instituted in the name of Stephen Brush and Georgiana Hyslop, but in its progress her death was suggested and the cause was ordered to proceed in the name of Brush.

In 1856 Mrs. Kimberly conveyed block 69 south of

Cass street in the city of Saginaw to Robert Hyslop of the city of New York to satisfy a demand he held against her husband. Sutherland & Sweet had been intrusted with the collection of the demand and there was correspondence on the subject, but after one or two letters this was conducted by Sweet and Hyslop, Sutherland taking no part in it. When Sweet came to send to Hyslop the Kimberly conveyance he wrote him that he had an offer of $300 for the block and that he thought that was its full value. The correspondence was continued and it eventuated in an agreement to sell and finally in a deed to Binder. The deed was given in the spring of 1858, and in August of that year Binder deeded to Sweet. In March, 1863, Robert Hyslop died leaving a will by which he gave his estate to his wife Georgiana and Brush in trust for certain purposes. In May, 1865, this action was brought and nominally by Brush and Mrs. Hyslop to set aside the deed from Robert Hyslop to Binder and that from Binder to Sweet on the charge that the legal title thus obtained from Hyslop was procured by their fraud upon him. It was alleged that the fraud was not discovered during the life of Hyslop, and Brush swears that it was first made known by Newell Barnard of Saginaw in a letter of May 30, 1864, addressed to Hyslop after his death.

The case made by the bill is that Hyslop, testator of complainants, gave a conveyance to Binder, which with the later one from Binder to Sweet, was liable to be set aside on equitable grounds; wherefore in contemplation of equity Hyslop continued to be owner subject to the repayment of the money he had received; that on his death such right and ownership were vested in complainants by the will and so remained and that complainants sued in their character of such owners for the relief to which their testator was entitled. *Stump v. Gaby*, 17 Eng. L. & Eq., 357.

Now it must be considered that the facts either contradict the alleged title of complainants to sue or at all

events establish a state of things which according to the principles of the court must necessarily preclude any relief.

It appears that just previous to the bill and on the 16th of March, 1865, Brush and Mrs. Hyslop entered into the following agreement with Newell Barnard:

"Whereas heretofore, to wit, about the 16th day of March, A. D., 1858, Robert Hyslop (now deceased), conveyed by deed to William Binder block sixty-nine (69) in that division of the city of Saginaw, south of Cass street according to the plat of said city of record in the office of the register of Saginaw county, in the State of Michigan.

"And whereas also it is claimed and supposed that said deed to Binder was obtained by fraud and that the present holder of the title of said block was a party to such fraud, and that such property may be recovered back by the representatives of said deceased.

"And whereas also the executor and executrix of the said deceased reside in the city of New York, and are desirous of having Newell Barnard, of the said city of Saginaw, aid in the prosecution of a suit for the recovery of said property on the terms hereinafter stated.

"Now, therefore, in consideration of the premises the said executor, Stephen Brush, and the said executrix, Georgiana Hyslop, as parties of the first part, and said Barnard as party of the second part, have and do hereby agree as follows, that is to say:

"First. Said Brush executor and said Hyslop executrix, in consideration of the agreements of said Barnard herein contained agree that a suit may be instituted in their names as executor and executrix of said deceased for the recovery of said property; that said Barnard may manage and control the same as to him may seem best; that he may if he shall deem proper so to do compromise the aforesaid claim to said property on the part and in the behalf of the estate of said deceased, and that they will at any time on the request and at the expense of said Barnard convey by deed of quit claim all the rights of said estate either legal or equitable in or to said lands either before suit brought or after decree therein to said Barnard or whom he may request.

"Second. Said Barnard agrees in consideration of the foregoing that he will on the delivery of this agreement pay to said Brush and Hyslop the sum of twentyfive dollars; that he will use his best efforts and judgment in the management of the suit hereinbefore referred to if any is brought to bring the same to a just issue and

end; that he will advance and pay all necessary costs and disbursements necessary to carry on such suit, said parties of the first part furnishing him all the evidence affecting the controversy that may be in their possession or control; that if he shall make any compromise of the said matters in controversy he will use his best judgment in making the same; that if the property is conveyed to him he will dispose of the same to the best of his judgment and out of the proceeds of any compromise or disposition or sale of said property he will retain first the aforesaid sum of twenty-five dollars so advanced and paid herein and all other payments, costs and disbursements by him paid out in the prosecution and management of the aforesaid matters with interest thereon from the time of payment, and the residue of such proceeds after retaining the aforesaid payments and interest he will pay to the said parties of the first part the equal one-half and retain the other half as a compensation for his trouble in the management of said business.

"It is further agreed by said Barnard that in all such proceedings he will save said parties of the first part harmless from all costs or liability arising out of or from the bringing of any such suit whether successful or not."

And the case shows without any question whatever that the bill was filed under this arrangement and that all proceedings on that side from first to last have been taken on the basis of it by Mr. Barnard as exclusive master of the litigation, and that except in name he has been from the commencement the real and only complainant.

Now only two theories seem possible.

One, that Barnard through his contract with complainants acquired the whole equity which they received through the will from Hyslop; and the other, that instead of acquiring the equity, he contracted to buy and they to sell, under an agreement therefor which they ask the court to help them carry out, the right to complain in their names of a fraud committed against their testator. According to the first, the whole interest, which was a pure equity, became vested in Barnard, and he should have been complainant on the record and the bill should have explained his interest and title to sue. Supposing

the facts sufficient to establish this theory, it then follows that the evidence defeats the title of the nominal complainants to sue, and makes out a very different case from that alleged in the bill.

The other view involves considerations equally fatal. In *De Hoghton v. Money*, L. R. 2 Ch. App., 164, the court observed that the "right to complain of a fraud was not a marketable commodity," and it was held that an agreement to acquire a right of that sort would not be countenanced. See also *Hill v. Boyle*, L. R. 4 Eq. Cas., 260; 2 Story's Eq. Jur., § 1040 *g*. note; 2 Spence's Eq. Jur., 868, 869, 872. In order to grant relief under this aspect of the case, it would be necessary for the court to base its action upon the validity in equity of such an arrangement and to regard it as competent for Barnard to buy the right not only to sue in equity for the fraud on Hyslop, but moreover the right to do so in the names of Hyslop's trustees. This the principles of the court will not allow. No extended discussion is necessary.

The result is that the decree below must be affirmed with costs.

The other Justices concurred.