# OCTOBER TERM, 1891.*

MARTIN L. SWEET v. JAMES W. CONVERSE, DAVID P.
CLAY, NIRAM A. FLETCHER, DAVID D. ERWIN, AND
THE NEWAYGO MANUFACTURING COMPANY.

*Creditors' bill—Fraud—Who may complain—Parties—Pleading.*

1. For a misjoinder of parties defendant those only can demur
who are improperly joined; citing Story, Eq. Pl. § 544.

2. The terms of a demurrer should suggest the errors complained
of, and, when two defendants join in a demurrer for want of
equity solely, neither can be allowed to raise a question not
available to both.

3. An attorney for a mortgagee, who is charged with actively
participating with his client in the fraudulent foreclosure of
the mortgage, whereby all of the mortgagor's property was
absorbed to the injury of creditors, is a proper, though not a
necessary, party to a bill filed by a judgment creditor for an
accounting and the payment of his judgment.

4. Where a judgment creditors' bill alleges that the mortgagor and
a receiver appointed in the foreclosure suit fraudulently conspired
together to enable the mortgagee to get possession of all of
the mortgagor's assets for a nominal consideration, and that
the conspiracy was successful, it is not necessary to aver that
as a consequence there were no assets with which to pay com-
plainant's judgment, or that the conduct of the defendants
operated as a fraud upon other creditors, or that the intent
was to defraud them.

5. Where a mortgagee of a corporation, its president, and the
receiver appointed in the foreclosure suit conspire to, and do,

---

* Continued from Vol. 87.

conceal the mortgagor's property from bidders at the foreclosure sale, neither the conveyance by the receiver, nor the confirmation of the sale by the court, secured by a fraud upon it, can protect such property as against existing creditors.

6. The rule that a right of action for fraud is non-assignable has no application to an assignment of something which is in itself tangible and capable of delivery, and involving a right of property, but in such a case the right to whatever remedy the assignor has follows the assignment.

7. The following general propositions are summarized from the opinion of Mr. Justice McGRATH:

*a*—Acts are constructively fraudulent as to creditors when injurious to their rights, without of necessity involving *actual* fraud or an intent to defraud; citing *Hinchman v. Tower*, 10 Mich. 513.

*b*—If the conduct of a party is such as, in its tendency and result, to operate to defraud others, it will be deemed fraudulent, although no such purpose was intended; citing *Putnam v. Reynolds*, 44 Mich. 115.

*c*—Where there is *actual* fraud in obtaining the property of an insolvent, the party acting fraudulently will be presumed to have intended the results which followed that conduct.

*d*—A fraud upon a debtor by one creditor, whereby such creditor is enabled to absorb *all* of the debtor's property, to the exclusion of other creditors, operates as a fraud upon them, and they have a right to complain, especially where the debtor is in collusion with the overreaching creditor.

*e*—A secured or an unsecured creditor has no right to so fraudulently use his security or judgment as to deprive other creditors of their rights in the debtor's property.

*f*—A judgment obtained by fraud and collusion, under which it is sought to absorb a debtor's property to the exclusion of creditors, may be repudiated; and equity will relieve against a judgment where the defendant (complainant) was prevented from making his defense at law by the fraudulent conduct of the plaintiff (defendant); citing *Burpee v. Smith*, Walk. Ch. 327.

Appeal from Kent. (Grove, J.)   Argued July 2, 1891. Decided October 9, 1891.

Bill to reach assets in the hands of an alleged fraudulent holder. Defendants Converse and Fletcher appeal

from decree overruling joint general demurrer. Decree affirmed. The facts are stated in the opinion.

*Eggleston & McBride,* for complainant.

*Uhl & Crane,* of counsel for complainant, contended:

1. A general demurrer will not lie if any relief whatever is warranted by the bill; citing *Hawkins v. Clermont,* 15 Mich. 511; and the only question before the Court is "whether there is any matter in the bill upon which any equitable relief whatever could be justified;" citing *Hoffman v. Ross,* 25 Mich. 175.

2. The judgment creditors, upon the return of their executions unsatisfied, had a legal right to file a creditors' bill; citing How. Stat. § 6614; and complainant, *as assignee,* had a like right to file a bill to set aside the fraudulent transactions alleged in his bill; citing How. Stat. § 6205; and he was not required to cause executions again to be returned unsatisfied before so doing; citing *Rankin v. Rothschild,* 78 Mich. 10.

3. The jurisdiction of courts of equity to set aside a decree obtained by fraud, on an original bill filed for that purpose, has long been unquestioned; citing Freem. Judg. § 486; and the court had jurisdiction to vacate the foreclosure decree, if obtained by fraud, in order to protect the equitable levy of the complainant (*Edson v. Cunings,* 52 Mich. 52), which was created upon the effects of the judgment debtor by the filing of the bill and the service of subpœna; citing *Beck v. Burdett,* 1 Paige, 305; *Corning v. White,* 2 Id. 567; *Storm v. Waddell,* 2 Sandf. Ch. 494; *Miller v. Sherry,* 2 Wall. 237; *Sedgwick v. Menck,* 6 Blatch. 156; *Brown v. Nichols,* 42 N. Y. 26; *Adsit v. Butler,* 87 Id. 585; *Bank v. Gage,* 93 Ill. 172.

4. The defendant Converse obtained a conveyance of the property of the judgment debtor by fraudulent means and corrupt practices, and the court will consider him a trustee for the purpose of administering equitable relief; citing *Huxley v. Rice,* 40 Mich. 73.

5. The sale of the property of the Newaygo Manufacturing Company to Converse, under the decree made in the foreclosure proceedings, is null and void as against complainant, by reason of the fraudulent and corrupt practices of the defendant Converse to bring it about; citing *Johnson v. Waters,* 111 U. S. 640; *Decker v. Decker,* 108 N. Y. 128.

6. The defendants, upon this hearing, can derive no advantage from the omission from the bill of the following allegation, required by Chancery Rule No. 102, namely: "That he knows,

or has reason to believe, the defendant has equitable interests, things in action, or other property, exceeding one hundred dollars in value, exclusive of all prior claims thereon, which the complainant has been unable to discover and reach by execution on such judgment or decree." This defect would only be open upon *special* demurrer, as a general demurrer challenges the equity of the case made by the bill, and must be overruled if a case for equitable relief is set out, however imperfectly; citing *Glidden v. Norvell*, 44 Mich. 202; *Day v. Cole*, 56 Id. 294.

7. As the bill alleges that Converse has transferred this property to the Converse Manufacturing Company, *the proceeds are not in a situation to be levied upon;* hence the complainant, upon this bill, if sustained by proofs, would be entitled to a decree against the defendant Converse for the amount of his judgments, interest, and costs; citing *Reeg v. Burnham*, 55 Mich. 39.

*Fletcher & Wanty*, for appellants, contended:

1. It must be apparent, at first glance, that there was no excuse whatever for making any person but Converse and the Newaygo Manufacturing Company defendants; and, as a matter of fact, Fletcher and Erwin were made parties simply ·for the purpose of spreading upon the records a lot of scandalous charges against them. The bill was not filed for discovery or relief against any defendant except Converse, and an answer under oath is waived, in which case discovery cannot be asked of a defendant; citing *Torrent v. Rodgers*, 39 Mich. 85; and since by statute parties are made general witnesses, a bill of discovery cannot be filed; citing *Shelden v. Walbridge*, 44 Mich. 251.

2. It is not alleged that the Newaygo Manufacturing Company conveyed its property to Converse to defraud its creditors, but the sole ground of complaint is that Converse has defrauded the corporation, the alleged fraud having been consummated 15 months before complainant purchased the judgments he seeks to collect, which brings the case within the decisions in *Brush v. Sweet*, 38 Mich. 574; *Dickinson v. Seaver*, 44 Id. 631; *Dayton v. Fargo*, 45 Id. 153.

3. We submit that no case can be found in which a creditor has been allowed to attack transactions between a debtor and third parties where no pretense is made that the object was to defraud the creditor. It has been often said that a creditor cannot redress the wrongs done to his debtor. He cannot claim damages for a trespass or for a deceit, and to permit him to step in and interfere between a debtor and the persons with

whom he deals would be giving him the same rights in his debtor's property as the debtor himself has. In some of the cases in which this question has been discussed, it has been claimed that a court of equity could interfere in such transactions; but we submit that in no case has a court done such a thing, and that whenever a creditor has gone before a court seeking such relief he has been defeated; citing *Prosser v. Edmonds*, 1 Younge & C. 481; *French v. Shotwell*, 5 Johns. Ch. 555; *Crocker v. Bellangee*, 6 Wis. 645; *Hovey v. Holcomb*, 11 Ill. 660; *McAlpine v. Sweetser*, 76 Ind. 78; *Eaton v. Perry*, 29 Mo. 96; *Graham v. Railroad Co.*, 102 U. S. 148; *Lewis v. Rice*, 61 Mich. 97; *Pettus v. Smith*, 4 Rich. Eq. 203.

4. The Newaygo Manufacturing Company could not retry the questions disposed of in the foreclosure suit, and in the absence of fraud and collusion as to a judgment or decree, neither of which is alleged as to this decree, no creditor can afterwards retry them for the debtor; citing *Rogers v. Rogers*, 3 Paige, 379; *Mattingly v. Nye*, 8 Wall. 373; *Marsh v. Pier*, 4 Rawle, 288; *Candee v. Lord*, 2 N. Y. 275; *Decker v. Decker*, 108 Id. 128; and complainant, being a party to the foreclosure suit, is concluded as to all of the questions decided therein.

McGRATH, J. This is a bill in the nature of a judgment creditors' bill to reach assets in the hands of an alleged fraudulent holder.

From the bill of complaint it appears that in December, 1886, three judgments, aggregating $2,300, were recovered in the Newaygo circuit court against the Newaygo Manufacturing Company; that executions were issued thereon, and were returned unsatisfied; that in March, 1890, these judgments were assigned to complainant.

It further appears that the Newaygo Manufacturing Company had been operated as a feeder to a railroad in which defendants Converse and Clay were largely interested, and to whom it was largely indebted; that after the railroad had been enabled to pay off its indebtedness, and declare a large margin of profit, the Newaygo Manufacturing Company was largely indebted to various parties, and especially to Converse; that a large part of

its indebtedness, and all of its indebtedness to Converse, was secured by Clay's indorsement; that Clay was the holder of 90 per cent. of the stock of the Newaygo Manufacturing Company, and was president of that company; that, to secure Clay upon his indorsements, the company executed to him a mortgage of $250,000, and afterwards, to secure Converse, it executed a mortgage to him for about $200,000; that these mortgages were executed as a part of a fraudulent scheme to get possession of the assets of the Newaygo Manufacturing Company; that within three months some of the notes indorsed by Clay were allowed to go to protest, and the bank holding them filed its bill in the Kent circuit court to foreclose the first-named mortgage; that Converse came in, proved up his claim, and the same was declared to be a lien upon the property under the mortgage; that the defendant Erwin was appointed receiver, and the defendant Fletcher acted as attorney for Converse; that defendants controlled the foreclosure proceedings, and fraudulently conspired to inflate the indebtedness and conceal and depreciate the assets, so as to enable Converse to buy up the outstanding claims covered by the mortgage at one-fourth of their par value, and to purchase the assets of the company at much less than their real value; that Converse was enabled by these fraudulent methods to secure a large part of the secured claims at one-fourth of their actual value, and to purchase the assets of the company, which had been inventoried by the receiver at $448,000, for the sum of $76,000; that to reach this result defendants fraudulently withheld from the records a deed of certain valuable property, concealed the fact that the company had a valuable equity of redemption in another valuable tract, and concealed from bidders the actual situation of other valuable assets; that Converse has since formed the Converse Manufacturing Company,

with a capital stock of $150,000, and has conveyed the property so acquired to said company for the sum of $350,000; that all the stock in said company, except stock of the value of $300, is held by said Converse.

The bill prays that defendant Converse may be decreed to account for the assets of the Newaygo Manufacturing Company, and to pay complainant's judgment, and for general relief.

Defendants Converse and Fletcher jointly demur for want of equity. The first point presented is that the defendant Fletcher is improperly made a party, and that as to him the demurrer must be sustained. The pleadings, however, do not raise that question. For a misjoinder of parties defendant those only can demur who are improperly joined. Story, Eq. Pl. § 544. A proper or necessary party cannot demur to the joinder of an improper party. The demurrer here is joint, not several; and while it is true that a demurrer may be good as to one defendant, and bad as to others (1 Barb. Ch. Pr, 108; *Barstow v. Smith*, Walk. Ch. 394), that is so only where defendants sever their pleas or demur specially. The terms of a demurrer should suggest the error, and, where two parties defendant join in a demurrer for want of equity solely, neither can be allowed to raise a question which is not available to both. In *Barstow v. Smith, supra*, the demurrer, although joint, was special.

A general demurrer for want of equity will not be sustained, unless the court is satisfied that no discovery or proof properly called for by or founded on the allegations in the bill can make the subject-matter of the suit a proper case for equitable cognizance. When a new cause of demurrer is assigned *ore tenus*, the cause must be co-extensive with the demurrer. *Clark v. Davis*, Har. Ch. 227, 235.

But, irrespective of the question of pleadings, Fletcher

is a proper, although he may not be a necessary, party. Fraud is alleged, and specific acts are set forth with clearness and particularity, and the bill makes Fletcher an active participant therein. In cases of this nature, if any charge of -fraud is made in which the attorney participated, and such participation is set up in the bill, the attorney may properly be made a party, although he may not be a necessary party. Story, Eq. Pl. § 232.

It is urged that the bill does not allege that the company conveyed its property to Converse to defraud its creditors, but that Converse had defrauded the company of its property, and that the right to complain of a fraud is not assignable; that it is not alleged that there was any fraud in the decree in the foreclosure proceedings, hence the judgment is conclusive.

While the bill sets forth that Converse defrauded the company, it also alleges that Clay, the owner of 90 per cent. of the stock of the company, and its president and manager, together with the receiver and the other defendants, fraudulently conspired together to enable Converse to get possession of all of the assets of the company for a nominal consideration, and that as a result of such conspiracy Converse succeeded. It was hardly necessary to aver that in consequence there were no assets to apply to the liquidation of the claim in question, or that the conduct of defendants operated as fraud upon other creditors, or that the intent was to defraud creditors.

Acts are constructively fraudulent as to creditors when injurious to their rights, without of necessity involving actual fraud or intent to defraud them. *Hinchman v. Town,* 10 Mich. 513. If the conduct of a party is such as, in its tendency and result, to operate to defraud others, it will be deemed fraudulent, although no such purpose was intended. *Putnam v. Reynolds,* 44 Mich. 115. Where there is actual fraud in obtaining the prop-

erty of an insolvent, the party acting fraudulently will be presumed to have intended the results which follow that conduct. A fraud upon a debtor by one creditor, whereby such creditor is enabled to absorb all of the debtor's property, to the exclusion of other creditors, operates as a fraud upon such other creditors, and they have a right to complain, especially where the debtor is in collusion with the overreaching creditor. A secured creditor or an execution creditor has no right to so fraudulently use his security or his judgment as to deprive other creditors of their rights in the debtor's property.

"The fact that a transfer of a debtor's property with intent to defraud his creditors is accomplished through the agency of a valid judgment, lawfully enforced, does not alter its fraudulent character, or enable it to defy justice. A judgment may often be made an effective agency in accomplishing, beyond its own legitimate purpose, a further result of fraud and dishonesty, and may even be selected as the suitable means by reason of its inherent character. The complaint here is not of the judgment, but of the use that was made of it." *Decker v. Decker*, 108 N. Y. 128; *Candee v. Lord*, 2 Id. 269.

Even a judgment obtained by fraud and collusion, under which it is sought to absorb a debtor's property to the exclusion of creditors, may be repudiated; and in *Burpee v. Smith*, Walk. Ch. 327, it is held that equity will relieve against a judgment at law, where complainant was prevented from making his defense at law by the fraudulent conduct of the defendant.

Here it is not the decree that is complained of, but the use that was made of it. It is alleged that Converse, Clay, the president of the company, and the receiver conspired to conceal, and did conceal, the debtor's property from bidders, and, as to such property, neither the conveyance by the receiver, nor the confirmation of the sale by the court, secured by a fraud upon it, can protect it as against existing creditors.

It is true that the law will not encourage speculation in the naked right to complain of a fraud, but a clear distinction is made between an assignment of a naked right to complain of a fraud and the assignment of a liquidated claim or judgment in favor of a creditor.

The cases cited by defendants' counsel are clearly distinguishable from the present case.

In *Brush v. Sweet*, 38 Mich. 574, the Court held that such an arrangement as was entered into between the executors of Robert Hyslop and Barnard was invalid in equity, and dismissed the bill.

In *Dickinson v. Seaver*, 44 Mich. 624, the claim was 15 years old, and involved nothing that would keep it alive, unless the fraud would do so; hence the assignment was of nothing more than an action for fraud.

*Dayton v. Fargo*, 45 Mich. 153, was an action on the case for deceit, which the Court held was not assignable. The Court say:

"The general doctrine, both at law and in equity, has always been that nothing is assignable that does not directly or indirectly involve a right of property. It has been held repeatedly in this State that equity will not enforce the demands of an assignee of a right to sue for fraud when the cause of action is confined to that."

In *Lewis v. Rice*, 61 Mich. 97, the Court held that, in an action at law, creditors could not undertake to redress wrongs against their own debtor.

In *Prosser v. Edmonds*, 1 Younge & C. 481, the court expressly distinguish that case from one of "an assignment of a chose in action, as a note not negotiable, or a bond, or a mortgage, or an equity of redemption, when possession of the thing assigned is delivered to the assignee."

In *Pettus v. Smith*, 4 Rich. Eq. 203, the court say:

"In one case, and only one, that now occurs to me,

has a creditor a right to ask redress in relation to a fraud upon his debtor; and it is where the fraud was perpetrated, not only with the view of injuring the debtor, but also with an intent to affect the creditor himself, *i. e.*, where the creditor was the object of the fraud. In that case, perhaps, as well as in the familiar case where the debtor colludes with a third person to defraud his creditor, the creditor has a right to claim redress. But with regard to frauds intended to light on the debtor alone, and when his creditors were not within the contemplation of the author of the wrong, and are only affected consequently by it, society could not move on upon any principle that would allow them to interfere, forensically, in such cases."

In *French v. Shotwell*, 5 Johns. Ch. 555, a subsequent purchaser sought to set aside a judgment lien on the ground of a fraud upon the judgment debtor, and the court say:

"If a judgment was fraudulent by collusion between the parties to it, on purpose to defraud a subsequent purchaser, the case would present a very different question. But if the judgment was fraudulent only as between the parties, it is for the injured party alone to apply the remedy."

*Graham v. Railroad Co.*, 102 U. S. 148, decides simply that a subsequent creditor cannot complain unless the fraud is aimed at him.

These cases discuss two questions, viz.:

1. The right of a creditor to complain of a fraud against his debtor, when such fraud is aimed at the debtor only; and

2. Whether an action for fraud is assignable.

As already said, a fraud upon an insolvent, which enables the perpetrator to absorb all the debtor's property, to the exclusion of creditors, operates as a fraud upon creditors, and they have a right to complain whether the debtor sees fit to complain or not. His acquiescence in such case is no more conclusive upon his creditors than

his voluntary conveyance would have been. In equity, such a fraud will be deemed to have been aimed at creditors as well as the debtor. It is sufficient in such a case that the intent was to fraudulently obtain the debtor's property.

All of the cases cited concede that the rule contended for, that a right of action for fraud is not assignable, has no application to an assignment of something which is in itself tangible, capable of delivery, involving a right of property. In such case, the right to whatever remedy the assignor has follows the assignment. Here, valid judgments were assigned to complainant. They would have survived to the personal representatives of the assignors. Complainant does not set up a right acquired by assignment from the Newaygo Manufacturing Company. It has nothing to assign but a naked right to bring suit. Complainant may avail himself of any remedy open to his assignors; nor does the fact that he, before these judgments were assigned to him, proved up in the foreclosure proceedings a claim then held by him, which was declared to be secured by said mortgage, affect this right.

The decree of the court below is affirmed, and the demurrer overruled, with costs to complainant. Defendants will have 20 days to make answer to said bill.

MORSE, LONG, and GRANT, JJ., concurred.

CHAMPLIN, C. J., took no part in the decision.