ADOLPH WIMPFHEIMER et al.

*v.*

JOHN J. PERRINE et al.

[Filed December 10th, 1900.]

1. Right to set aside mortgages as void under the Chattel Mortgage act (*Gen. Stat. p. 2113 § 4 et seq.*) for failure to record immediately, does not pass to the mortgagor's assignee for the benefit of creditors to the exclusion of subsequent execution creditors.

2. The right of a creditor, under *Gen. Stat. p. 2113 ¶ 52*, to avoid an unrecorded chattel mortgage of his debtor, passes to his assigns on the assignment of the debt.

3. The rights obtained by a judgment creditor on the issuance and delivery of an execution pass on an assignment of the judgment thereafter, and may be enforced by the assignee for the purpose of avoiding unrecorded chattel mortgages of the judgment debtor.

Heard on bill, supplemental bill, answers, replication and proofs.

*Mr. James E. Howell,* for the complainants.

*Mr. Edward M. Colie* and *Mr. William Read Howe,* for the defendants Lindslay.

*Mr. Thomas A. Davis,* for the defendant assignee of Perrine.

EMERY, V. C.

Complainants are judgment and execution creditors of the defendant Perrine, and file their bill and supplemental bill to

·establish, as creditors, under four executions, a lien upon personal property in the possession of the defendant Stagg, as assignee of Perrine, under the Assignment act for the benefit of creditors.   The assignment was made previous to the issuing of ·execution on any of complainants' judgments, and previous to the recovery of all of the four judgments, except one for $167, which was recovered on the same day the assignment was made.   Previous to the execution of the assignment, defendant Perrine had executed and delivered to the defendants Lindslay three chattel mortgages on the tangible personal property assigned, the dates and amounts of the mortgages being respectively October 17th, 1896, for $3,000; February 10th, 1898, for $1,200, and February 14th, 1898, for $8,500.   Neither of these mortgages was recorded until March 25th, 1898, the day of the ·execution of the assignment.

Subsequent to the filing of the bill the mortgaged property was sold by consent of the parties, the liens being transferred to the proceeds, and the assignee defendant now holds the pro-·ceeds of sale, about $4,700 (being less than the amount due on the mortgages to the defendants Lindslay), subject to the order ·of the court.

All the debts upon which complainants' judgments were recovered were incurred by the debtor previous to the recording ·of the mortgages, some of the claims, however, being debts due to others than the complainants, to whom they were assigned before recovery of judgment thereon, and one of the four judgments was assigned to the complainants after recovery.   Some of the claims proved under the assignment are upon debts incurred by the insolvent debtor before the recording of the mortgage.

It is not disputed that, but for the assignment and its effect ·on their rights, the complainants (at least as to all of their judgments based on their own claims against the mortgagors) would be entitled to have the mortgages declared void under the Chattel Mortgage act (*Gen. Stat. p. 2113 § 4 et seq.*) because ·of the failure to record immediately.   *Roe* v. *Meding, 8 Dick. ·Ch. Rep. 350 (Errors and Appeals, 1895).*

The first question is whether, in view of the assignment, the

complainants have the right to set aside the mortgages, or whether this right passed to the assignee, under this assignment, to the exclusion of subsequent execution creditors. Complainants claim that the right does not pass to the assignee, relying on the decision in *Shaw* v. *Glen*, 10 *Stew. Eq. 32* (*Chancellor Runyon, 1883*). It was held in this case that such assignee could not attack a chattel mortgage for failure to record it as required. In the previous decision, in *Pillsbury* v. *Kingon*, 6 *Stew. Eq. 287* (*Errors and Appeals, 1880*), it was held that an assignee could attack a conveyance by the assignee if fraudulent against creditors, but Chancellor Runyon, in *Shaw* v. *Glen*, held that the principle settled in *Pillsbury* v. *Kingon* did not apply to conveyances unaffected by fraud, and that in such cases the assignee was bound by the equities to which the property assigned was liable when it came to his hands from the assignor. In the subsequent case in chancery (*Graham Button Co.* v. *Spielmann, 5 Dick. Ch. Rep. 120* (*1892*) Vice-Chancellor Van Fleet held that a receiver of an insolvent corporation, as representing creditors, could set aside a chattel mortgage, void for failure to comply with the registry laws. He considered (see *pp. 127, 128*) that the principle applied (in *Pillsbury* v. *Kingon*) was the rule that a deed void as against creditors is void also against those who represent creditors, and that the assignee, by the statute, becomes the representative of the creditors of the assignor and stands invested with their rights, and may avoid any instrument which creditors might avoid. Upon this view of *Pillsbury* v. *Kingon* the vice-chancellor declared his opinion to be that the rule therein declared against fraudulent conveyances was also to be applied to conveyances declared void by statute against creditors for failure to record, and he also stated that the rule applied in *Shaw* v. *Glen* could not be reconciled with this view of the effect of decision in *Pillsbury* v. *Kingon*. This decision in *Graham Button Co.* v. *Spielman* was affirmed on appeal, for the reasons given by the vice-chancellor. *5 Dick. Ch. Rep. 796* (*1893*). In a later case, in the supreme court (*Knowles Loom Works* v. *Vacher, 28 Vr. 490* (*1895*), a question arose on the statute which avoided unrecorded conditional sales of personal property "as against subsequent

purchasers and mortgagees in good faith," and the question was whether a subsequent mortgagee, to secure a pre-existing debt, was a mortgagee in good faith under the statute. It was held that he was such mortgagee in good faith.

Mr. Justice Van Syckel, who delivered the opinion of the court, considered the question of the right of an assignee to attack an unrecorded mortgage as having a bearing on the question in hand, and in the course of his decision (see *pp. 498, 499*) treated the decision in *Shaw* v. *Glen* as not overruled by either *Pillsbury* v. *Kingon* or *Graham Button Co.* v. *Spielmann,* notwithstanding the opinion of Vice-Chancellor Van Fleet, and he approved the principle declared in *Shaw* v. *Glenn,* distinguishing between the effect of involuntary and voluntary assignments in cases where there was no fraud. The court of errors and appeals affirmed the judgment in *Knowles Loom Works Case,* on writ of error, for the reasons given by the supreme court. *30 Vr. 586 (1896).*

The question which I have now to decide is: What is the *status* and binding force of the decision in *Shaw* v. *Glen,* made expressly upon the point now involved, in view of the subsequent comments on that decision?

In reaching a conclusion on this point it must be observed that in neither of the subsequent cases was the question directly involved of the right of an assignee, as representing creditors, to attack a mortgage void against creditors under the registry laws.

The subsequent expressions of disapproval of the decision in *Shaw* v. *Glen* made by the judges of lower or co-ordinate tribunals, in cases which did not expressly require a ruling upon it, cannot therefore be taken as affecting its binding authority. Nor did the affirmance by the appellate court of the judgment and decree of the lower tribunals in the subsequent cases have the effect of extending the binding authority of the opinions in the lower tribunals to the points which were not directly involved in the decision of the case either below or on appeal. As to these points not involved, the final appellate court must, notwithstanding the general affirmance of a judgment or decree, for the reasons given in the court below, necessarily retain the power to

decide such new points when they come up directly for decision and review.

. I think, further, that by the comments of Mr. Justice Van Syckel, in the latter case, upon *Shaw* v. *Glen*, and by the adoption of his opinion as the reason for affirming the judgment, the court of errors and appeals has indicated that it took this view of the effect of the *Button Company* v. *Spielman Case* upon *Shaw* v. *Glen*, and considers the question of the correctness of the latter decision as open for review when directly involved on appeal. If this view as to the effect of the later cases is correct, then *Shaw* v. *Glen*, until overruled when directly called in question, still stands as a decision of this court made expressly upon the point, and therefore binding on me. I shall so treat it for the purpose of this decision, and hold that the right to attack the mortgages did not pass to the assignee, and in his hands the property remains subject to the mortgages in question, which were given to secure honest debts or liabilities. But inasmuch as the assignee holds subject to the unrecorded mortgages, the creditors as against whom these mortgages are void must, necessarily, be entitled to enforce their liens on the property thus held by the assignee. Otherwise the provision of the statute declaring the mortgages void, as against them, is rendered entirely ineffective, and by the method of a voluntary assignment these provisions of the registry law can be nullified as to creditors. The assignee is not a purchaser for value, and as to so much of the property in his hands as is represented by a mortgage invalid as to a creditor, such creditor is entitled to enforce his lien in preference to the mortgagee. Complainants, therefore, are entitled to so much of the fund represented by the mortgaged property as is sufficient to satisfy those claims held by them, as to which the mortgages are void under the statute.

The second question is: Does the protection of the statute extend to all of the complainants' claims? Complainants hold four judgments—the *first*, recovered on March 25th, 1898, for $167 and costs, upon a promissory note given by Perrine, the debtor, to them on June 3d, 1897, for money loaned; the *second*, recovered April 16th, 1898, by Albert Courter, for $165.76, upon a debt due to Courter before the recording of the chattel mort-

gage, which judgment was assigned to complainants on April 26th, 1898, and after the assignment; the *third,* recovered April 19th, 1898, for $5,277.21, upon a debt due from the debtor to the complainants, for $1,259.35, with interest, and the balance being upon notes originally given by the debtor to Martin Bates & Company, before the recording, and by them assigned to the complainants after they were due and after the assignment; the *fourth* judgment was obtained May 3d, 1898, for $318.79 and costs, upon an obligation incurred by the debtor to the complainants before the recording. The question is whether, as to so much of the complainants' claims as is based on the debts assigned, and not on debts originally due to them personally, as creditors of Perrine, before the recording of the mortgage, the chattel mortgage is void under the statute.

The Chattel Mortgage act (*Gen. Stat. p. 2113 ¶ 52*) makes an unrecorded mortgage "absolutely void as against the creditors of the mortgagor, and as against the subsequent purchasers and mortgagees in good faith." It is contended that the effect of this provision is to confer a personal statutory privilege or lien upon the creditors, as to whom the mortgages are void, and that this privilege or lien is not assignable and does not follow an assignment or transfer of the debt. It is further contended that it has been settled by the decision in *Roe* v. *Meding, supra,* that under the statute, chattel mortgages which are void as to creditors who became such before the mortgages are recorded, are valid as to the creditors who become such after the recording, and that as to the assigned claims, the complainants are such subsequent creditors.

No decisions upon the precise point have been referred to, but several decisions relating to the enforcement by an assignee of statutory liens, such as mechanics' liens, are relied on, as are also decisions adverse to the enforcement of special equitable liens, such as vendors' liens, by an assignee of the debt. These decisions do not seem to me to be applicable. The Chattel Mortgage act was not intended, and does not profess, to give creditors of the mortgagor, as such, liens on personal property, or to define who shall be creditors. The creditors' lien on personal property of his debtor is derived solely from the issuing of

an execution upon a judgment and its delivery to the sheriff. *Hall* v. *Nash, 13 Dick. Ch. Rep. 554 (Errors and Appeals, 1899)* ; *Gen. Stat. p. 1418 ¶ 18*. And, as is entirely settled, the recovery of such judgment and the issuing of execution entitling the judgment creditor to a lien upon personal property of the debtor is necessary in order to put a creditor in a position to attack the validity of an unrecorded mortgage. This principle was restated in both the *Graham Button Co.* and *Knowles Loom Work Cases*. It must follow, therefore, as it seems to me, that for the purpose of determining whether any person has such *status* as a lien creditor entitled under the chattel mortgage to question the lien created by the mortgage, the judgment must be conclusive that he is such creditor and has such capacity and *status*. As was said by Mr. Justice Dixon, in *Minzesheimer* v. *Doolittle, 15 Dick. Ch. Rep. 394 (Errors and Appeals, 1900)*, a case where complainant's *status* as a judgment creditor was involved : "The judgment, of course, fixes against all the world the *status* of the complainant, as a judgment creditor of the defendant." The *status* of a judgment creditor having a right to question the mortgage as void against the lien of his execution being thus conclusively fixed by the judgment, the judgment creditor must have, as it seems to me, the right, under the Chattel Mortgage act, as construed in *Roe* v. *Meding,* to avoid the mortgage as to all those claims included in his judgment which were incurred by the debtor before the recording of the mortgage, whether the claims were incurred originally in his own favor, or in favor of others whose rights were legally assigned to him, and upon which assignment he became, under the law, the legal creditor. *Receiver* v. *Spielman* and *Roe* v. *Meding* both put the right of the receiver to challenge the validity of an unrecorded mortgage expressly upon the lien on the insolvent debtor's property obtained by the appointment. *Roe* v. *Meding* further decides that as to the creditors who have proved claims before the receiver, in whose favor he, as representing creditors, may avoid the mortgage, the statute of 1885 makes a distinction between creditors of the mortgagor before the recording of the mortgage and creditors who became such after recording, and avoids the mortgage only so far as may be necessary for the receiver to pay

the creditors whose claims arose before the recording. But *Roe* v. *Meding* does not touch the question now presented, whether on a claim which was incurred by the mortgagee before the recording and assigned by the creditor after the recording, the assignee is a creditor whose claim was incurred before recording. In my judgment, he must be so considered.

The general rule undoubtedly is, that on the assignment of a debt, which is assignable at law and is evidenced by a writing which is actually delivered to the assignee, the right to any remedy which the assignor had as a creditor passes to the assignee. To hold that the remedy for the recovery of the debt was impaired merely by the assignment, would necessarily lessen the value of the debt in the creditors' hands, and it would be so opposed to the general rules and policy applied to the rights of the assignors and assignees of the property that a legislative act claimed to have this effect must disclose such intention clearly. In the present statute there is certainly no express or clear declaration in the statute itself that the remedy or advantage given to the creditor for the recovery of the debt is personal to the creditor, to whom the debt was incurred, and the contention that the additional remedy for recovery of the debt given by the statute is personal and does not follow as a right belonging to the owner of the debt is rested upon expressions in the opinion in *Roe* v. *Meding,* which are claimed to indicate that the protection of the statute was personal to the creditor to whom the debt was incurred, and did not follow the assignment of his debt. This question was neither involved nor touched on in the case, nor do I think the expressions relied on warrant this inference as to the construction of the statute.

That the assignees or representatives of the creditors, who are such by operation of law (*e. g.,* receivers of insolvent corporations or legal representatives) can pursue the remedy is entirely settled, and so far as relates to the effect of the Chattel Mortgage act on an assignment of the debt, it is, in my judgment, impossible, on principle, to distinguish between a voluntary assignment of the debt and an assignment by operation of law. It is further insisted that the assignability of the right to declare the mortgages void comes within the scope of the rule

based on public policy, forbidding the assignments of rights to avoid deeds for fraud and like cases. As to this argument, it is sufficient to observe that the protection of this rule is properly invoked in cases where this right of action to set aside for fraud is itself the right attempted to be assigned, and the sole basis of the action. The cases referred to will, on examination, be found to be cases of this character. But the rule does not apply where property or an interest therein is legally assignable and is actually assigned, and the assignment is effective independent of the right of action for fraud. In such cases the right to avoid previous deeds for fraud, &c., is based on the ownership of the property assigned, and is claimed as a remedy for the recovery of the debt or property duly assigned. An application of the rule thus invoked to cases of the latter class would stamp the statute of frauds itself, which expressly gives the right to set aside deeds for fraud to creditors *or their assigns,* as founded in this respect on a violation of public policy, rather than on the recognition of established principles of right and justice.

A reason for the extension of the remedy "to assigns" of creditors by express provision in this statute of frauds may, perhaps, be found in the fact that previous to the statute *13 Eliz.* (the original of our statute of frauds) the title of a fraudulent grantee was good at law and the lands conveyed in fraud could only be reached by the creditor in a court of equity, and the statute was intended, and had the effect, to avoid the fraudulent title at law as well as in equity. *Phelps* v. *Morrison, 10 C. E. Gr. 538 (Errors and Appeals, 1874, Chief-Justice Beasley, at p. 544).* In equity, but not at law, debts were assignable at the time of this statute, and the express provision extending the remedy to assigns may have been for the purpose of giving assignees of debts the same remedy at law under the statute which they previously had in equity. Since debts have become legally assignable, no such express extension to assigns would seem to be necessary, and the absence thereof would not exclude them.

I hold, therefore, that the remedy for the recovery of his debt which was possessed by any creditor of the mortgagor passes to his assigns upon the assignment of the debt.

This conclusion reaches to all of the judgments of complainants, except the one assigned to them by Courter after its recovery and after the issuing and delivery of execution thereon to the sheriff. By such delivery Courter obtained a property right, which was assignable with the judgment, and as such may be enforced by the complainants as assignee. *Sweet* v. *Clay,* 49 *N. W. Rep. 899 et seq.* All of the judgments and executions, therefore, being founded entirely upon claims or debts incurred before the chattel mortgages in question were recorded, the mortgages must be held invalid as to the complainants, and the proceeds of sale must be paid to complainants.