FRANKLIN NEEDLE CO. *v.* AMAZON HOSIERY CO.

FRAUDULENT CONVEYANCES—MORTGAGES—BONA FIDE SECURITY—
EVIDENCE.

An insolvent corporation mortgaged substantially all of its property to secure certain *bona fide* indebtedness amounting nearly to the value of the property mortgaged. A receiver was at once appointed with the consent of the mortgagor, and the property sold, under order of the court, to the secured creditors. Early in its dealings with the mortgagees, the

mortgagor had promised to protect them, so far as possible, in case it should get into difficulty, and, some six months prior to giving the mortgage, it authorized its manager to secure creditors at his discretion; but it did not appear that the mortgage was arranged for between the parties in advance of its execution, or that the mortgagees were aware of the insolvency of the mortgagor at the time of extending credit. *Held,* that the mortgage was not fraudulent as to unsecured creditors, though their claims accrued subsequent to those of the mortgagees.

Appeal from Muskegon; Russell, J. Submitted January 31, 1901. Decided September 25, 1901.

Creditors' bill by the Franklin Needle Company, William D'Olier, and Henry D'Olier against the Amazon Hosiery Company, the Amazon Knitting Company, Charles H. Hackley, and Thomas Hume. From a decree dismissing the bill, complainants appeal. Affirmed.

*L. K. Soper* ( *C. W. Sessions,* of counsel), for complainants.

*Smith, Nims, Hoyt & Erwin,* for defendants.

MOORE, J. This case, in many of its features, is like the case of *Longley, Low & Alexander* v. *Amazon Hosiery Co., ante,* 194. A reference to that case will aid in understanding this one, and will make a long statement of facts unnecessary. The complainants in this case are among the unsecured creditors mentioned in the *Longley Case.*

One of the most important questions in the case is whether the mortgage given by the Amazon Hosiery Company to Hackley and Hume is simply a mortgage, or whether, under the facts and circumstances disclosed by the record, it is to be regarded, as claimed by the complainants, as a common-law assignment. That question is fully discussed by Chief Justice MONTGOMERY in his opinion in the *Longley Case,* holding the transaction was not a common-law assignment; and it will not be necessary to repeat the discussion here.

The solicitor for complainants argues with great zeal that a secret agreement was made between the hosiery company and Hackley and Hume, by which they were to be secured for their deal; and that, after this agreement was made, the hosiery company obtained a large amount of credit for goods which were part of the assets of the corporation when the mortgage was given, and that this was a fraud upon the unsecured creditors, for which the courts can give a remedy,— citing *Sweet* v. *Converse*, 88 Mich. 1 (49 N. W. 899); *Cutcheon* v. *Buchanan*, 88 Mich. 594 (50 N. W. 756); *McBryan* v. *Trowbridge*, 125 Mich. 542 (84 N. W. 1084); and other cases. In view of this claim of counsel, it becomes necessary to inquire what are the facts. Upon the trial there were not many witnesses sworn, and the testimony is not complicated. In the garnishee proceedings Mr. Hume testified:

"The first transaction of Hackley and Hume with the Amazon Hosiery Company was a loan by us to them for $10,000 in the spring of 1896. Of this loan and its renewals we held $5,000 March 25, 1898, and the Lumberman's National Bank held the other $5,000. In the fall of 1896, Mr. Powell asked further assistance, and we finally agreed to help them, but not to any definite extent nor for any definite time. We told him we wanted him to protect us in case his company got into any difficulties. He promised that, if they ever did, he would protect us as far as he could. There was nothing said as to method or manner of protection. We then indorsed some paper for him."

Upon the trial of this case he testified:

" The last money that we furnished the Amazon Hosiery Company, or got for them, was in the latter part of January, 1898. I thought their financial condition was all right at that time, and had no reason to suppose that the company was insolvent. Neither Mr. Hackley nor I had any idea, at that time, of going into the business that was then being carried on by the company. The thought first occurred to us at about the time the Amazon Knitting Company was organized, and then we did it only because we couldn't see any other way out. Nothing occurred, from the time the last indebtedness was incurred, in Jan-

uary, 1898, up to March 23, 1898, to change my opinion as to the ability of the company to continue to pay its debts."

He also testified that "the subject of giving us security by mortgage had been talked about for two or three days before [referring to the time the mortgage was given]. That is the first I ever heard of it."

Mr. Powell testified, "I know I was never asked for a dollar of security from Hackley and Hume or the Muskegon banks until the mortgages were made."

This testimony is not contradicted. It is true that as early as in September, 1897, the board of directors of the company had authorized Mr. Powell, the manager, at such time as he thought it wise, to execute such papers as were necessary to secure such creditors as he thought it necessary to secure, and that he procured an attorney to draft a form of a mortgage that he might use for such purpose. The record is entirely barren of any testimony tending to show that when Hackley and Hume extended credit to the company, or induced others by their guaranty to extend credit, they knew, or had reason to suppose, the company was insolvent. There is nothing to indicate any want of good faith upon their part.

In the case of *McBryan* v. *Trowbridge, supra,* a mortgage was given upon about $27,000 worth of property to secure an indebtedness of $8,000 or $9,000, leaving in the hands of the debtor only about $1,400, while he had upwards of 100 creditors, with debts against him, unsecured, of upwards of $7,000. In *Sweet* v. *Converse, supra,* the allegation of the bill, which was demurred to, was that the result of the transaction was to pass to one creditor, for $76,000, property worth $448,000, while other creditors were unsecured, and no assets were left in the hands of the debtor. In this case there is no claim the indebtedness was not *bona fide,* or that property considerably in excess of the amount of the debt was included in the mortgage. When the legal question of whether the

conveyance which was made was a common-law assignment or not is decided in the negative, it decides the case.

The decree is affirmed.

MONTGOMERY, C. J., HOOKER and GRANT, JJ., concurred. LONG, J., did not sit.