120 F.3d 66
 38 Collier Bankr.Cas.2d 318, 38 Fed.R.Serv.3d 331,
31 Bankr.Ct.Dec. 144, Bankr. L. Rep. P 77,456
 In Re: John Robert MEYER, Debtor,
FEDERAL DEPOSIT INSURANCE CORPORATION, as Successor to The
Resolution Trust Corporation, as Receiver for Far
West Federal Savings Bank, Plaintiff-Appellee,
v.
John Robert MEYER, Defendant-Appellant.
 No. 96-2777.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 1, 1997.
Decided July 17, 1997.
 
 Estelle Linn, Chicago, IL, Jerry Langley, Federal Deposit Insurance Corporation, Office of the Executive Secretary, Roberta H. Clark (argued), Robert D. McGillicuddy, Federal Deposit Insurance Corporation, Appellate Litigation, Washington, DC, for Plaintiff-Appellee.
 John R. Meyer (argued), pro se.
 Before BAUER, CUDAHY and MANION, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 This appeal stems from a complaint of non-dischargeability in the personal bankruptcy of the debtor John Robert Meyer. In 1988, Far West Commercial Finance Co. (Commercial Finance) extended a secured loan to Hydro-Dynamics, Inc., and Hydro-Dynamics of Colorado (collectively Hydro-Dynamics). While an officer and director of Hydro-Dynamics, the debtor Meyer personally guaranteed the loan. Hydro-Dynamics defaulted on the loan, and Commercial Finance sued Hydro-Dynamics and Meyer in Arizona state court. The Arizona court entered a default judgment against Meyer on September 23, 1992, amounting to $3,450,236.05, plus accrued interest, costs, attorney's fees and accountant's fees (as of March 6, 1995). Meyer filed for personal bankruptcy.
 
 
 2
 By the time Meyer filed, the real party-in-interest as creditor on the loan had shifted from Far West Commercial Finance, through two banks, and finally to the Resolution Trust Corporation (RTC) as receiver for the banks. The RTC fingered Meyer for numerous financial shenanigans, claiming that Meyer had fraudulently induced Commercial Finance to extend the loan and then further defrauded Commercial Finance to keep the scheme going. The bankruptcy court declared Meyer's debt nondischargeable. 11 U.S.C. § 523(a). The district court affirmed.
 
 
 3
 On appeal from the district court, Meyer argues that the wrong entity filed against him in bankruptcy court, and thus a filing flaw forestalls pursuit by the RTC--or actually by the Federal Deposit Insurance Corporation (FDIC), the RTC's successor. He also argues that the FDIC failed to prove non-dischargeability under 11 U.S.C. § 523(a), and that the bankruptcy judge committed an evidentiary error. The district court thus erred in affirming the bankruptcy court, Meyer contends. We find no error.I. Time-barred under Rule 4007(c)?
 
 
 4
 Although Chapter 7 affords a fresh start to individual debtors after bankruptcy, some debts can survive whole despite a general discharge. 11 U.S.C. § 523. Among them are those that a debtor incurred with the aid of fraud and deceit, as did Meyer, according to the FDIC. 11 U.S.C. § 523(a)(2)(A)-(B), (4), (6). For these deceit-debts, "the creditor to whom such debt is owed" must request a determination of non-dischargeability from the bankruptcy court. 11 U.S.C. § 523(c)(1). Bankruptcy Rule 4007(c) imposes a firm 60-day deadline (after the first creditors' meeting) for creditors to make these requests. The bankruptcy court may grant extensions of time past 60 days, but only if a creditor so moves before the 60 days are up. Tardiness is otherwise fatal. After Meyer filed for bankruptcy in April 1992, Commercial Finance timely sought and received permission to delay submitting its complaint of non-dischargeability. It finally filed on June 29, 1993.
 
 
 5
 Meyer spies a flaw: the wrong entity filed against him. During discovery, Meyer came across an assignment agreement belonging to Commercial Finance, dating from 1987. Under that agreement, Commercial Finance had assigned all present and future loan receivables to its parent, Far West Federal Bank, S.B. (Federal Bank), although Commercial Finance retained "the right to service and administer [the loans] and [to] be compensated therefor." The parent Federal Bank thus automatically had become the assignee of the Hydro-Dynamics loan payments. Federal Bank later failed, leading the RTC to put Federal Bank into receivership on June 7, 1991. The RTC set up a new Far West Federal Savings Bank (Savings Bank), to which the insolvent Federal Bank assigned all its loans and collateral. When Savings Bank failed, too, in April 1994, the banking regulators gave up on reincarnation. The RTC itself assumed the Hydro-Dynamics loan and became the real creditor party-in-interest in this action. To Meyer, whether the loan was in the hands of Federal Bank, Savings Bank, the RTC or the FDIC does not matter. What matters, Meyer says, is in whose hands the loan was not--namely, Commercial Finance's. During the crucial 60-day window after the first creditors' meeting in 1992, Commercial Finance was no longer "the creditor to whom such debt is owed." 11 U.S.C. § 523(c)(1). Yes, Meyer concedes, Commercial Finance may have asked for and received the requisite extensions from the bankruptcy court; but those extensions are unavailing, because Commercial Finance was never the right party to be pursuing the non-dischargeability complaint. Meyer adds that the real party-in-interest was the "creditor to whom such debt is owed"; and whichever of the successor parents it was, it missed the 60-day window. On this view, the FDIC is out of luck. The claim of non-dischargeability must be dismissed.
 
 
 6
 When Meyer pointed out the nominal error, the bankruptcy court rejected Meyer's view and permitted the RTC to substitute for Commercial Finance on May 20, 1994. We think the bankruptcy court acted appropriately. Rule 4007(c) guarantees a debtor a real fresh start. It defines a time certain when creditors may no longer come claiming that the debtor defrauded them and that certain debts should be non-dischargeable. After the 60 days are over, all the demands for non-discharge that can be made, have been made. The debtor can relax. The force of Rule 4007(c) therefore should fall first and foremost on whether a complaint was filed against a specific debt, not so much on who makes the complaint. Here, Commercial Finance's timely filing put Meyer on notice. Meyer knew that some creditor in a daisy chain would contest the discharge of the $3 million-plus default judgment. The purpose of Rule 4007(c) had thus been served, and the 60-day rule satisfied. We also note that Meyer has not shown, nor even argued, that he suffered any prejudice from the nominal error. That the subsidiary (Commercial Finance) filed instead of the parent (Federal Bank) was of no consequence to Meyer. The absence of prejudice to Meyer affirms our view that Rule 4007(c) turns on the identification of a contested debt, not of the contesting creditor.
 
 
 7
 Rules 15 and 17 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rules 7015 and 7017) contemplate allowing just this sort of party-substitution. "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest," Rule 17(a) states, "until a reasonable time has been allowed after objection for ... substitution of[ ] the real party in interest." And under Rules 15(c) and 17(a), a court is to treat the substituted party as if it had been the named party all along. In Wadsworth v. United States Postal Serv., 511 F.2d 64 (7th Cir.1975), we confirmed a trial court's ability to correct a nominal error like the one at bar. A postal truck collided with Wadsworth's car, causing $736.50 in damage. The insurance company paid Wadsworth $676.50 for the loss, leaving a deductible of $60. Wadsworth then sued the Postal Service for the full $736.50, but he made a mistake. Following the practice of the Illinois courts, he omitted the insurance company as co-plaintiff. Federal Rule of Civil Procedure 17(a) required that the insurance company be included as the real party-in-interest. By the time this error came to light, the insurance company was time-barred from entering the tort suit against the United States under 28 U.S.C. § 2401(b). The result was that Wadsworth would only be able to sue for $60. Id. at 65-66.
 
 
 8
 Invoking Rules 15 and 17, the Wadsworth court refused to let a filing error frustrate justice. Rule 17, Wadsworth held, was intended " 'to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.' " Id. at 66 (quoting 3A J. Moore's Federal Practice 17.15-1, at pp. 602-603 (2d ed.1974)). Wadsworth had made an understandable mistake; and the court ordered the insurance company joined as if it had been a party from the beginning. In the instant case, the RTC made an understandable mistake. The loan looked as if Commercial Finance still owned it. Commercial Finance still retained the obligation to service the loan. It created and maintained the pertinent documents. And Commercial Finance was the named creditor in the Arizona default judgment of September 23, 1992. As a practical matter, when the wrong entity files for an extension of time concerning a specific debt, this kind of clerical confusion is most likely afoot. Someone in control of several companies will have mixed up to whom the debt is owed. The companies are likely to be in privity with one another, see, e.g., FDIC v. Alshuler (In re Imperial Corp. of Am.), 92 F.3d 1503 (9th Cir.1996); and as here, receipt of the loan payments and administration of the loan may have been split. Like Wadsworth, the FDIC should not lose its entire claim of non-dischargeability for a clerical lapse without prejudice to Meyer. See In re Stoecker, 5 F.3d 1022, 1028 (7th Cir.1993) ("Forfeitures of valuable claims, and other heavy sanctions, should be reserved for consequential or easily concealed wrongs.").
 
 
 9
 Meyer points to a clutch of cases showing rigid observance of the 60-day rule. Ichinose v. Homer Nat'l Bank (In re Ichinose), 946 F.2d 1169, 1172-73 (5th Cir.1991) (rejecting tardy creditor's reliance on filings of other creditors); Buckeye Gas Prods. Co. v. Rhodes (In re Rhodes), 71 B.R. 206, 207-08 (9th Cir. BAP 1986) (dismissing for one day late); Norwest Fin., Texas, Inc. v. Curtis (In re Curtis), 148 B.R. 465, 466 (Bankr.N.D. Texas 1992) (dismissing complaint as tardy by one business day). These cases are off-point. In them, a creditor came tardily to announce that a previously untainted debt is non-dischargeable. The court in each case refused to forgive the latecomer. This obduracy serves the purpose of Rule 4007(c): encouraging creditors to file their complaints speedily or yield them forever. In re Ichinose, 946 F.2d at 1172-73. Here the debt at issue, which is the critical thing (and not the precise identity of the creditor), has remained fixed--the $3,450,236.05 and associated expenses deriving from Meyer's personal guarantee. A putative creditor filed on time a complaint of nondischargeability and thus fulfilled Rule 4007(c)'s mandate. The only question that arose later was which member of a corporate family properly claimed that debt. Better that the right entity file the request for non-discharge in time under § 523(c); but if the wrong related entity files for the same debt, a bankruptcy judge is not obliged to toss the request out of court.II. Meyer's challenges to the bankruptcy court's denial of discharge
 
 
 10
 The bankruptcy judge found three separate bases for denying discharge of Meyer's debt under the guarantee. First, when Meyer submitted a statement of his personal finances to Commercial Finance, Meyer neglected to mention that, just a few months before, he had transferred to his wife the major assets he listed on the statement--his cars, his IRA and Keogh accounts and his 50% stake in Hydro-Dynamics. The bankruptcy judge decided that this deceitful submission alone justified non-discharge of the full $3 million-plus debt. 11 U.S.C. § 523(a)(2)(B). Second, Meyer falsely represented that he was solvent and that he would keep Commercial Finance apprised of pertinent changes in his financial condition. Meyer also did not reveal the existence of a pending civil action in federal court against him. The bankruptcy judge decided that these examples of "false pretenses, a false representation, or actual fraud" independently justified non-discharge of the entire debt. 11 U.S.C. § 523(a)(2)(A). Third, Meyer wrongfully converted the collateral (the accounts receivable) securing the loan by diverting $1,758,539.29 to secret bank accounts, and bamboozled Commercial Finance with inflated daily reports about Commercial Finance's security (the accounts receivable). These wrongs served as a third basis for non-discharge of $1,758,539.29 of the debt. 11 U.S.C. § 523(a)(2)(B), (a)(4), (a)(6).
 
 
 11
 Meyer does not challenge the bankruptcy judge's factual conclusions about his misdeeds. (It is well that he does not; the evidence against him seems compelling.) Meyer does argue that the bankruptcy court erred in admitting the financial statement, dated May 23, 1988 and bearing his name. We will overturn an evidentiary ruling only if we find clear error. See Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust, 51 F.3d 1319, 1328 (7th Cir.1995). Meyer says that the financial statement that Commercial Finance provided is not his and that he submitted nothing like it. It is hard to square Meyer's assertion with the testimony given in the bankruptcy court. An RTC trial attorney testified that he found a duplicate while looking through boxes of Hydro-Dynamics' documents, in a folder labeled "J. Robert Meyer." There is more: a credit manager at another creditor of Hydro-Dynamics', Fieldcrest Cannon, testified that Fieldcrest, too, had a copy of that same financial statement in its safe. The bankruptcy court did not clearly err in admitting the statement as Meyer's.
 
 
 12
 Meyer also asserts two legal theories that allegedly exculpate him. The first is that Commercial Finance's assignment of the loan payments to its parent (then Federal Bank, now the FDIC) somehow bars the parent from pursuing Meyer for non-discharge. The theory goes like this. Meyer never misled Federal Bank; Meyer had no written or oral agreements with Federal Bank; thus, Federal Bank has no claim against Meyer. This argument betrays a fundamental misunderstanding of contract law. The fallacy in Meyer's reasoning is best laid out in this example. Creditor lends money to Debtor, based on Debtor's representations. Creditor assigns the loan to Assignee. Later, Debtor is revealed to have lied to Creditor. (The only wrinkle in this case is that Meyer is the guarantor for a defaulting Debtor.) Meyer is saying that Assignee has no legal recourse against Debtor. That cannot be true: the very reason that the institution of assignment exists is to enable Creditor to transfer its rights against Debtor (Meyer) to Assignee (Federal Bank).
 
 
 13
 In rejoinder, Meyer pulls out the assignment agreement, in which Commercial Finance disclaimed warranties to or recourse by Federal Bank. These disclaimers shield him from Federal Bank (now the FDIC), he maintains. But whether Federal Bank has rights against the Commercial Finance is irrelevant to him. The disclaimer may deny Federal Bank the right to pursue Commercial Finance, but it leaves intact Federal Bank's rights against Meyer. In a variation on the same theme, Meyer argues that Federal Bank had no claims against either Meyer or Commercial Finance. That would be an odd assignment indeed. The only way we can see for Federal Bank to have no recourse against anyone is for Commercial Finance never to have assigned its claim against Meyer. Of course, that would contradict Meyer's earlier position under § 523(c)(1), which the bankruptcy court adopted: that Commercial Finance was not the real party-in-interest. Only in the realm of quantum physics can an entity exist in two places at the same time, and Meyer is no electron.
 
 
 14
 Meyer's second argument is similarly specious. The State of Arizona revoked the corporate charter of Hydro-Dynamics, Inc., on September 10, 1990, for not keeping up with Arizona's filing requirements. Meyer and a business partner continued borrowing money under the loan agreement with Commercial Finance, but they never informed Commercial Finance of the corporate dissolution. The firm was reincorporated under the same name in August 1991. Meyer argues that the dissolution of Hydro-Dynamics, Inc., frees him from his debt. That would be a neat trick, if a personal guarantor of a loan to a corporation could extinguish her liability just by having the corporation dissolved. Meyer's argument is one of state law, but the parties have not told us which state's law applies. Meyer cites only inapposite cases under Illinois law, concerning causes of action that accrue after a corporation has been dissolved. See, e.g., Cornick v. Hi Grade Cleaners, Inc., 595 F.Supp. 718, 720 (N.D.Ill.1984); Blankenship v. Demmler Mfg. Co., 89 Ill.App.3d 569, 573, 44 Ill.Dec. 787, 411 N.E.2d 1153, 1156 (1980). We need not craft and research Meyer's claim under the law of all possibly relevant jurisdictions; but we do note that his claim strikes us as implausible. If a creditor and a debtor materially alter their agreement without the guarantor's assent, and thus expose the guarantor to additional risk, the guarantor will be released. FDIC v. Rayman, 117 F.3d 994, 998-99 (7th Cir.1997) (applying Illinois law); Consolidated Roofing & Supply Co., Inc. v. Grimm, 140 Ariz. 452, 456, 682 P.2d 457, 461 (Ariz.Ct.App.1984) (applying same rule). Incorporation, re-incorporation, or de-incorporation are not likely to count as a material alteration, see Bernardi Bros., Inc. v. Great Lakes Distrib., Inc., 712 F.2d 1205, 1209 (7th Cir.1983) (applying Illinois law), and certainly not when the guarantor caused the change and never notified the creditor. See United States Shoe Corp. v. Hackett, 793 F.2d 161, 163 (7th Cir.1986) (applying Wisconsin law).
 
 
 15
 Our conclusions so far eliminate Meyer's objections to the denial of discharge based on his submission of the deceitful financial statement. 11 U.S.C. § 523(a)(2)(B). We thus have sufficient grounds to affirm non-discharge of his entire debt, including accrued interest, costs, attorney's fees and accountant's fees. His remaining arguments under other subsections of 11 U.S.C. § 523 are moot.
 
 
 16
 AFFIRMED.