# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: PATEEL BOYAJIAN,
                              *Debtor,*

PATEEL BOYAJIAN,
                              *Appellant,*

v.

NEW FALLS CORPORATION,
                              *Appellee.*

No. 07-55713

BAP No.
CC-06-01085-
DKMo

In the Matter of: SALPY BOYAJIAN,
                              *Debtor,*

SALPY BOYAJIAN,
                              *Appellant,*

v.

NEW FALLS CORPORATION,
                              *Appellee.*

No. 07-55716

BAP No.
CC-06-01086-
DKMo

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Klein, Montali, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
October 20, 2008—Pasadena, California

Filed May 1, 2009

Before: Kim McLane Wardlaw, William A. Fletcher, and
Richard A. Paez, Circuit Judges.

5123

Opinion by Judge William A. Fletcher

---

## COUNSEL

Howard N. Madris; Alan G. Tippie, SULMEYERKUPETZ, Los Angeles, California, for the appellant.

Jeannine E. Del Monte; Raffi Khatchadourian, HEMAR, GORDON & ROUSSO, Encino, California, for the appellee.

---

## OPINION

W. FLETCHER, Circuit Judge:

New Falls Corporation ("New Falls") brought an adversary proceeding in bankruptcy court seeking a declaration that a default judgment owed by Pateel and Salpy Boyajian ("the Boyajians") is non-dischargeable under 11 U.S.C. § 523(a)(2)(B). The judgment against the Boyajians was based on a claim that they had failed to satisfy their obligations under a lease agreement. Although the judgment was entered in favor of New Falls's predecessor-in-interest, New Falls alleges that it was assigned all rights to the judgment, including the right to non-dischargeability under § 523(a)(2)(B).

The bankruptcy court held that because New Falls had not itself relied on the Boyajians' financial statements, its claim of non-dischargeability under § 523(a)(2)(B) failed as a matter of law. The Bankruptcy Appellate Panel of the Ninth Circuit ("the BAP") reversed, holding that New Falls stood in the shoes of its predecessor and could state a claim to non-

dischargeability under § 523(a)(2)(B) based upon its predecessor's reliance. We affirm the judgment of the BAP.

## I.   Procedural Background

On July 13, 1999, the Boyajians' company, Blue Diamond Straw & Toothpick Company, Inc. ("Blue Diamond"), entered into a lease agreement with the Epic Funding Corporation ("Epic"). At the time of the agreement, Pateel Boyajian was Blue Diamond's President, and Salpy Boyajian was its Vice President. In order to obtain the lease, the Boyajians each submitted personal financial statements, and each signed a "Continuing Guaranty of Indebtedness" in which they personally guaranteed Blue Diamond's obligations under the lease. According to deposition testimony, Epic relied on the Boyajians' statements in agreeing to the lease.

On or about March 28, 2002, Epic sold its right, title, and interest in the lease to Cupertino National Bank dba The Matsco Companies ("Cupertino").[1] By May of that year, Blue Diamond and the Boyajians failed to make the required payments under the lease, thereby defaulting on both the lease agreement and the personal guaranties. In October, Cupertino filed a civil action against the Boyajians and Blue Diamond. Default judgment was entered against them in January 2003, and Cupertino was awarded damages totaling $193,132.69. In May 2003, Cupertino assigned all of its right, title, and interest in the judgment to Stornawaye Capital. On February 19, 2004, Stornawaye Capital in turn assigned all of its right, title, and interest in the judgment to New Falls.

---

[1]The Boyajians do not concede that the following chain of assignments was valid. But given the holding of the bankruptcy court that New Falls's claim necessarily failed as a matter of law, even assuming a valid chain of assignments, we assume at this stage that the assignments were indeed effective. The bankruptcy court will consider the Boyajians' factual contentions on remand.

The Boyajians each filed Chapter 7 bankruptcy petitions on March 16, 2004. On August 2, New Falls filed an adversary complaint against the Boyajians, seeking, *inter alia*, a ruling that the judgment owed by the Boyajians was non-dischargeable under § 523(a)(2)(B).[2] New Falls contended that the personal financial statements submitted by the Boyajians in order to obtain the lease were materially false, and that discharge was therefore unavailable. Both sides moved for summary judgment.

The bankruptcy court granted summary judgment to the Boyajians. The court held that "reliance [under § 523(a)(2)(B)(iii)] has to go to [New Falls] not to the predecessor in interest, and that at the time [New Falls] . . . purchased this debt this information was a few years old, and that there couldn't have been reliance by [New Falls]." New Falls appealed to the BAP, which reversed. *New Falls v. Boyajian (In re Boyajian)*, 367 B.R. 138 (B.A.P. 9th Cir. 2007). In a careful opinion, the BAP held that, barring any limitations in the assignment itself, § 523(a)(2)(B)(iii) permits an assignee to stand in the shoes of its assignor and to pursue an exception to discharge based on the assignor's reliance on materially false financial statements. In the view of the BAP, the bankruptcy court erred by failing to take account of "the legal implications of an assignment." *Id.* at 145.

---

[2]Section 523(a)(2)(B) provides that a debt will not be discharged in bankruptcy proceedings if the debt was obtained through:

use of a statement in writing—

(i)   that is materially false;

(ii)   respecting the debtor's or an insider's financial condition;

(iii)   *on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied*; and

(iv)   that the debtor caused to be made or published with intent to deceive

11 U.S.C. § 523(a)(2)(B) (emphasis added).

On April 26, 2007, the Boyajians appealed to this court. We affirm the judgment of the BAP and remand to the bankruptcy court for proceedings consistent with this opinion.

## II.   Standard of Review

We review decisions of the BAP de novo and apply the same standard of review that the BAP applied to the bankruptcy court's ruling. *Wood v. Stratos Prod. Dev. (In re Ahaza Sys., Inc.)*, 482 F.3d 1118, 1123 (9th Cir. 2007). We review de novo the bankruptcy court's decision to grant or deny summary judgment. *Suncrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc. (In re Raintree Healthcare Corp.)*, 431 F.3d 685, 687 (9th Cir. 2005). We also review de novo the bankruptcy court's and the BAP's interpretations of the bankruptcy statute. *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005); *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1065 (9th Cir. 2001).

## III.   Discussion

**[1]** This case turns on § 523(a)(2)(B)(iii) of the Bankruptcy Code and its intersection with the law of assignment. Section 523(a)(2)(B)(iii) provides an exception to discharge of a debt under 11 U.S.C. § 727 where the debt was obtained by means of a materially false written financial statement. Section 523(a)(2)(B)(iii) requires that the materially false statement be one "on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied." The question before us is whether the assignee of a debt must itself have relied on the materially false statement, or whether it is enough that the original creditor did so.

We begin by analyzing the statutory language. The Boyajians argue that under the plain meaning of § 523(a)(2)(B)(iii) the creditor asserting non-dischargeability must itself have relied on the allegedly materially false financial statement.

The Boyajians focus on the word "is" in § 523(a)(2)(B)(iii). They argue that use of the present tense requires that, in the case of an assignment, there be reliance by the creditor who holds the claim at the time of the bankruptcy, even if there was reliance by the creditor who originally extended credit.

**[2]** We disagree. First, a narrow focus simply on the verb tense in subsection (iii) does not capture the proper meaning of § 523(a)(2)(B). The relevant statutory language, quoted more fully, is as follows:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by . . . use of a statement in writing . . . that is materially false . . . on which the creditor to whom the debtor is liable for such money . . . reasonably relied; and . . . that the debtor caused to be made . . . with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B). The clear import of this language is that a debt is non-dischargeable to the extent that it is "obtained by . . . use of a statement in writing" made with the intent to deceive the creditor. Read as a whole, this language does not provide that a debt is non-dischargeable only if the assignee creditor reasonably relied on the materially false statement. *See, e.g.*, *McClellan v. Cantrell*, 217 F.3d 890, 896 (7th Cir. 2000) (Ripple, J., concurring) ("The language 'obtained by' clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property."). The most natural reading of the word "is" in subsection (iii) is simply that the debt is non-dischargeable if, at the time the money is obtained by the debtor, he or she used a materially false written statement that was intended to deceive.

**[3]** Second, Congress was undoubtedly aware that under general principles of assignment law an assignee steps into

the shoes of the assignor. Had Congress wished for assigned debts to be treated differently under § 523(a)(2)(B), it would have done more than rely on the word "is" in subsection (iii). In the absence of such specific language, we believe that Congress intended that the general law of assignment remain applicable. That is, assuming New Falls was indeed the recipient of a general assignment of the original judgment, it can stand in the shoes of its assignor and pursue a non-dischargeability action under § 523(a)(2)(B). *See Ota v. Samsung Elecs. Co. (In re Ota)*, 192 B.R. 545, 549 (B.A.P. 9th Cir. 1996) ("We conclude that absent an improper purpose or motive, an assignee or purchaser of claims has standing to object to a debtor's discharge."); *State Bar of Cal. v. Tooks (In re Tooks)*, 76 B.R. 162, 164 (Bankr. S.D. Cal. 1987) ("[T]his court holds that the partial assignment of a non-dischargeable claim under § 523(a)(4) and § 523(a)(6) does not affect the dischargeability of the claim.").

In support of their argument, the Boyajians rely on *General Electric Capital Corp. v. Bui (In re Bui)*, 188 B.R. 274 (Bankr. N.D. Cal. 1995). In *Bui*, General Electric Capital Corporation ("GECC") brought a suit to except from discharge a debt owed to it by Bui. GECC alleged that Bui had submitted false financial statements to a Levitz store in opening a charge account. Levitz later assigned its right to the debt to GECC. After Bui filed for bankruptcy, GECC brought suit seeking a declaration of non-dischargeability under § 523(a)(2)(B). The bankruptcy court found what it called a "fatal defect" in GECC's suit. *Id.* at 278. The court concluded that "[t]here is no evidence that GECC, the plaintiff here, relied upon anything in connection with the Levitz account. . . . No evidence is offered to show that Bui made any statements, written or oral, concerning Debtors' financial condition or anything else, *to GECC*." *Id.* at 279.

The court illustrated its holding with an analogy:

> In a situation such as this, involving a "middleman," reliance should be shown by each link in the chain

> of parties involved. Assume that A sells a ring to B representing in writing that it is a diamond whereas in fact it is a cubic zirconia. B sells it to C. C sells it to D and D sells it to E who discovers the truth. If A files for bankruptcy, does E have a valid cause of action against A under § 523(a)(2)? . . . It seems clear that, at a minimum, in the absence of an applicable legal presumption, E would have to show that B, C, D and E all reasonably relied on A's original misrepresentation to B.

*Id.* The *Bui* court provided no citation for its analogy and no reasoning to explain why sale of tangible property is comparable to an assignment of a debt under § 523(a)(2)(B). As the BAP properly concluded, an assignee creditor is not the same thing as a downstream purchaser of goods. As the BAP has previously held, assignees in general have standing to pursue non-dischargeability. *See In re Ota*, 192 B.R. 545. We therefore decline to adopt the reasoning and result in *Bui*, as well as that of two out-of-circuit bankruptcy court decisions in accord with it. *See WDH Howell, LLC v. Hurley (In re Hurley)*, 285 B.R. 871 (Bankr. D.N.J. 2002), and *Tompkins & McMaster v. Whitenack (In re Whitenack)*, 235 B.R. 819 (Bankr. D.S.C. 1998).

**[4]** Allowing an assignee creditor to pursue non-dischargeability under § 523(a)(2)(B) is in accord with a decision by the Seventh Circuit. While that court has not specifically addressed the statutory language in subsection (a)(2)(B)(iii), it has expressly rejected the result sought by the Boyajians in this case. In *FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 67 (7th Cir. 1997), Meyer was a business owner who personally guaranteed his business's debt. When the business defaulted, a default judgment was entered against Meyer. *Id.* The right to the debt was ultimately assigned to the Resolution Trust Corporation ("the RTC"). *Id.* When Meyer declared bankruptcy, the RTC sought non-dischargeability on various grounds, including § 523(a)(2)(B). *Id.* Meyer argued that the

assignee was barred from pursuing non-dischargeability. *Id.* at 70. The court rejected the argument. "Meyer is saying that Assignee has no legal recourse against Debtor. That cannot be true: the very reason that the institution of assignment exists is to enable Creditor to transfer its rights against Debtor . . . to Assignee . . . ." *Id.* at 70.

**[5]** Allowing an assignee to pursue non-dischargeability under § 523(a)(2)(B) is also supported by the policy goals of the Bankruptcy Code. The Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (quotation marks omitted). While the bankruptcy court in this case held in favor of the Boyajians, it noted the perversity of permitting dishonest debtors to receive a discharge through the fortuity that their creditor chose to assign the debt. Moreover, if assignment of such a debt were to obviate a future non-dischargeability action in all cases where the assignee did not itself rely on misleading financial statements, the functioning of modern debt markets would be unnecessarily disrupted. There is no reason to construe § 523(a)(2)(B)(iii) to require such an outcome.

### Conclusion

**[6]** We agree with the BAP's conclusion. The bankruptcy court erred in holding as a matter of law that New Falls could not pursue an action for non-dischargeability under § 523(a)(2)(B) because it was not the original creditor whom the Boyajians allegedly deceived in the course of incurring their debt. We therefore AFFIRM the judgment of the BAP and remand to the bankruptcy court for further proceedings.

**AFFIRMED**