RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: BRYAN PAZDZIERZ,

        *Debtor.*

_____

BRYAN PAZDZIERZ,

        *Appellant/Cross-Appellee,*

        *v.*

FIRST AMERICAN TITLE INSURANCE
COMPANY,

        *Appellee/Cross-Appellant.*

Nos. 11-2398/2441

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-10016—David M. Lawson, District Judge.

Argued: January 18, 2013

Decided and Filed: June 10, 2013

Before: BOGGS and WHITE, Circuit Judges, and McCALLA, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Shawn R. Cioffi, SHEEHAN & ASSOCIATES, PLC, Rochester Hills, Michigan, for Appellant/Cross-Appellee. Phillip J. Neuman, NADIS & NEUMAN, P.C., Farmington Hills, Michigan, for Appellee/Cross-Appellant. **ON BRIEF:** Kenneth A. Koluch, SHEEHAN & ASSOCIATES, PLC, Rochester Hills, Michigan, for Appellant/Cross-Appellee. Phillip J. Neuman, Sarah Heisler Gidley, NADIS & NEUMAN, P.C., Farmington Hills, Michigan, for Appellee/Cross-Appellant.

---

[*]The Honorable Jon Phipps McCalla, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.   In this bankruptcy proceeding, Bryan Pazdzierz ("Pazdzierz") appeals the district court's determination that Michigan assignment law does not bar First American Title Insurance Company ("First American") from asserting that Pazdzierz's debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).   First American cross-appeals the district court's determination that its subrogation rights derived from its payment under a title insurance policy do not provide an alternative ground to assert non-dischargeability.   We AFFIRM the district court's decision on the assignment issue, find it unnecessary to reach the subrogation issue, and REMAND to the bankruptcy court for proceedings consistent with this opinion.

**I.**

The parties do not dispute the bankruptcy court's findings of fact:

In July of 2007, defendant debtor Bryan Pazdzierz entered into a business relationship with Randy Saylor whereby defendant performed security work at a nightclub owned or controlled by Saylor.  Defendant also did work for American Business Consulting, Inc., ABCI, an entity owned or controlled by Saylor.  Defendant's work for ABCI included scouting for commercial properties, including car washes and reporting to Saylor about potential acquisitions.

In the fall of 2007, defendant personally applied for and obtained loans totaling $1,018,350 to purchase four car washes in southeastern Michigan. . . .   The defendant doesn't dispute that he took out these loans.

The loan closings were conducted by Patriot Title Agency, LLC, a former agent of plaintiff, First American Title Insurance Company, and a company owned or controlled by Saylor.   Patriot issued title commitments on each property to the original lenders.   The title commitments were underwritten by plaintiff.   Patriot also arranged for plaintiff to issue closing protection letters, CPL[]s, to the original lenders.   These letters indemnified the lenders and their assigns from certain specific losses, including losses arising out of fraud or dishonesty of the issuing agent—that is Patriot—handling their funds or documents

in connection with the closing.  Immediately after the loans were closed, the notes and mortgages were assigned to Bayview Financial, LLC.[1]

At some point, defendant defaulted on his repayment obligations. Bayview Financial, assignee of the lender's notes, discovered that defendant did not hold title to any of the properties securing the notes. Bayview filed claims with plaintiff, First American Title, under title commitments and the CPL[]s.

In responding to Bayview's claims, plaintiff alleges that it determined that the loan applications defendant submitted to the original lenders contained a number of false statements regarding income, assets, and employment. Plaintiff initially denied Bayview's claim asserting that the lenders failed to exercise due diligence in approving the loans.  Bayview sued plaintiff, and the parties entered into a settlement [on September 24, 2009,] whereby Bayview assigned 75 percent of its interest in the notes signed by defendant to plaintiff in exchange for an agreed upon sum of money.  That settlement is under seal.

At some point, plaintiff, First American, discovered that Saylor had used Patriot Title to conduct questionable transactions that resulted in dozens of claims against plaintiff arising out of title commitments and policies issued by Patriot.  Plaintiff sued Patriot and Saylor for, among other things, fraud seeking damages incurred as a result of its obligations to reimburse insured parties for losses caused by Saylor's alleged fraud. First American obtained a default judgment against Saylor in the amount of $10,172,840.

. . .
Debtor Bryan . . . Pazdzierz filed a voluntary Chapter 7 bankruptcy petition on [September]11, 2009.  Included on Schedule D, creditors holding secured claims, are the four loans from Bayview. . . .  On January 15, 2010, plaintiff filed this adversary complaint seeking the debt defendant owes plaintiff as assignee on the four Bayview notes, . . . in the amount of $763,762.50, 75 percent of $1,018,760.50, held undischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B).

Although the record reveals that Pazdzierz executed two of the promissory notes in November 2007, Pazdzierz asserts that Saylor told him that the purchases fell through in October 2007, that he never received the loan proceeds, and that he did not learn that Saylor defrauded Bayview until early 2008, when he received a statement of default

---

[1]Patriot never released the loan proceeds from its escrow account to purchase the properties from the sellers.

from Bayview.  The merits of the parties' positions on the dischargeability issue are not before us.

## II.

First American sought a judgment from the bankruptcy court that Pazdzierz's debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).  Pazdzierz moved for summary judgment, arguing that First American could not pursue an action under § 523(a)(2)(B) because it was an assignee of an interest in the notes and, under Michigan law, claims for fraud cannot be assigned. Following a hearing, the bankruptcy court agreed, and granted summary judgment to Pazdzierz.

First American sought reconsideration, arguing that Michigan subrogation law allows it to pursue the rights and remedies of its insured, including the right to assert that Pazdzierz's debt is non-dischargeable.  The bankruptcy court denied the motion, reasoning that First American's right of subrogation gave it the right to pursue Saylor, but not Pazdzierz.

On First American's appeal to the United States District Court for the Eastern District of Michigan,  the court reversed the grant of summary judgment to Pazdzierz, concluding that because First American's claim was based on unpaid promissory notes, First American could assert its assignor's reliance on Pazdzierz's alleged misrepresentations to satisfy § 523(a)(2)(B).  However, the district court rejected First American's argument that subrogation allows it to pursue a claim against Pazdzierz, reasoning that First American insured Bayview against only defects and encumbrances in the title to the mortgaged properties, not non-payment of the debt.  Pazdzierz and First American appeal their respective losses.

## III.

### A.  Standard of Review

"When reviewing an order of a bankruptcy court on appeal from a decision of a district court, we review the bankruptcy court's order directly and give no deference to

the district court's decision." *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 371 (6th Cir. 2008) (quoting *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 463 (6th Cir. 2008)). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Id.* "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007).

## B. Whether First American may maintain a claim for non-dischargeability under 11 U.S.C. § 523(a)(2)(B)

Section 523(a) in provides relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– . . .
> (B) use of a statement in writing –
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2). The party seeking to establish an exception to the discharge of a debt must prove the requisite elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). A central purpose of the Bankruptcy Code is to give "honest but unfortunate debtor[s]" a "fresh start," *id.* at 286–87, and "exceptions to discharge are to be strictly construed against the creditor." *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

The bankruptcy court barred First American from seeking an order of non-dischargeability because Bayview's claim against Pazdzierz sounded in fraud and was therefore not assignable under Michigan law; First American could not show that Pazdzierz made any representations to First American or that First American reasonably

relied on such representations; and First American's role in the transactions was to insure title to the properties, not to evaluate Pazdzierz's creditworthiness.

### 1. Assignability under Michigan law

"Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000). State law therefore governs the substance of claims unless a federal interest requires a different result. *Id.* Claims of fraud are personal and not assignable under Michigan law. *See Dickinson v. Seaver*, 7 N.W. 182, 185 (Mich. 1880) ("A right to complain of fraud is not assignable[.]").

Pazdzierz argues that First American's complaint seeking non-dischargeability is a simple fraud claim that First American does not possess because the assignment of that claim is invalid under Michigan law. First American responds that its claim is not for fraud, but rather to enforce promissory notes, and that the fraud that underlies the promissory notes made them non-dischargeable the moment the debt was incurred, without regard to whether the notes were later assigned.

The Michigan Supreme Court distinguishes between naked claims of fraud[2] and claims of fraud that are grounded in tangible property rights, such as judgments:

> All of the cases cited concede that the rule contended for, that a right of action for fraud is not assignable, has no application to an assignment of something which is in itself tangible; capable of delivery; involving a right of property. In such case, the right to whatever remedy the assignor has follows the assignment.

---

[2]Under Michigan law, actionable fraud requires:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harverster Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (quoting *Candler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919)) (internal quotation marks omitted).

*Sweet v. Clay*, 49 N.W. 899, 901 (Mich. 1891).  The Michigan Supreme Court applied this rule in a case involving the fraudulent transfer of a mortgage to defeat the claims of creditors.  *Howd v. Breckenridge*,  56 N.W. 221, 222 (Mich. 1893).  The court rejected the argument that the claim on the debt involved an improper assignment of a fraud claim, concluding that:

> It is true, as a general proposition, that a distinct right of action for fraud is not assignable, but *where the right to enforce a claim which is in itself assignable depends upon showing fraud incidentally the rule has no application*.  The assignment of the claim carries with it the right to employ any remedy which is open to the assignor.

*Id*. at 222–23 (emphasis added); *cf. Traer v. Clews*, 115 U.S. 528, 539 (1885).

In *Jones v. Hicks*, 100 N.W.2d 243 (Mich. 1960), Jones was the bankruptcy trustee for the estate of Albert LaVoy.  A creditor obtained a judgment against LaVoy and a writ of execution was placed in the hands of the defendant, Deputy Sheriff Hicks, for LaVoy's truck.  *Id.* at 244.  Jones alleged that Hicks induced a bidder to buy the truck for a sum well below the value of the truck, in order eventually to transfer the truck to Hicks.  *Id.*  Jones elected to affirm the sale of the truck and sue Hicks for damages caused by the fraud.  *Id.*  The court rejected Jones's claim, holding that assignees do not retain an election of remedies that enables them to assert a cause of action based on fraud.  *Id.* at 246.  Although Jones could properly allege fraud in an action to recover possession of the truck, he could not elect to sue for damages based on a claim of fraud. *Id.*

Applying these cases, the district court correctly determined that First American is not pursuing a naked claim of fraud against Pazdzierz.  First American seeks collection of a debt owed to it based on the promissory notes it obtained from Bayview. Under Michigan law, a promissory note is a negotiable instrument that may be transferred between persons.  *Compare* Mich. Comp. Laws § 440.3104(1), (5), *with* § 440.3203(2).  The transfer of a promissory note "vests in the transferee any right of the transferor to enforce the instrument."  Mich. Comp. Laws § 440.3203(2).  First American's notes are tangible property interests, and unlike the claim in *Jones*, First

American's claim is based on the notes, not a naked claim of fraud.  Thus, Michigan law does not bar First American's claim.

### 2. Whether First American can show the reliance required under 11 U.S.C. § 523(a)(2)(B)

The bankruptcy court additionally held that First American did not satisfy § 523(a)(2)(B)(iii) because it could not show that it reasonably relied on the information Pazdzierz provided to Bayview.  The court distinguished between the loss Bayview suffered and the loss First American suffered:  First American's loss rested on misrepresentations regarding title to the properties, not misrepresentations regarding Pazdzierz's creditworthiness.

The bankruptcy court rejected First American's argument that the court should follow the reasoning in *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088 (9th Cir. 2009).  In *Boyajian*, Pateel and Salpy Boyajian ("the Boyajians") submitted personal financial statements accompanying a guaranty necessary for a lease by Epic Funding Corporation ("Epic") to their company, Blue Diamond Straw & Toothpick Company, Inc. ("Blue Diamond").  *Id.* at 1089.  Epic sold its interest in the lease to Cupertino National Bank ("Cupertino").  *Id.*  When Blue Diamond and the Boyajians failed to make payments required by the lease, Cupertino filed a civil action and obtained a default judgment.  *Id.*  Cupertino assigned its interest in the judgment to Stornawaye Capital, which then assigned its interest to New Falls.  *Id.*  When the Boyajians filed for bankruptcy, New Falls filed an adversary complaint seeking a ruling that the judgment owed by the Boyajians was non-dischargeable under § 523(a)(2)(B).  *Id.* at 1090.  The bankruptcy court granted summary judgment to the Boyajians, reasoning that New Falls could not rest on the reliance of its predecessor-in-interest under § 523(a)(2)(B)(iii).  *Id.* The bankruptcy appellate panel reversed, holding that New Falls could stand in the shoes of its assignor and pursue an exception to discharge based on the assignor's reliance on materially false financial statements from the Boyajians.  *Id.*

The Ninth Circuit affirmed.  Analyzing the statutory language, the court rejected the argument that the word "is" in § 523(a)(2)(B)(iii) ("on which the creditor to whom

the debtor <u>is</u> liable for such money, property, services, or credit reasonably relied") requires reliance by the creditor holding the claim at the time of bankruptcy: "The most natural reading of the word 'is' in subsection (iii) is simply that the debt is non-dischargeable if, at the time the money is obtained by the debtor, he or she used a materially false written statement that was intended to deceive." *Id.* at 1091. The court reasoned that general principles of assignment law were known to Congress when it passed § 523, and that Congress would have used more specific language if it had intended to bar assignees from pursuing non-dischargeability based on fraudulent representations made by a debtor to a predecessor-in-interest. *Id.* The court also concluded that allowing an assignee to pursue non-dischargeability served the policy goals of the bankruptcy code, as it would be unjust to allow dishonest debtors to receive a discharge based on the fact that their creditor chose to assign their debt before they filed for bankruptcy. *Id.* at 1092; *see also Florida v. Ticor Title Ins. Co. of Cal. (In re Florida)*, 164 B.R. 636, 640 (9th Cir. B.A.P. 1994).

The Seventh Circuit has also rejected the argument that the assignment of loan payments prevents a successor-in-interest from pursuing a debtor for non-discharge. In *FDIC v. Meyer (In re Meyer)*, 120 F.3d 66 (7th Cir. 1997), the debtor, Meyer, personally guaranteed a loan extended by Far West Commercial Finance ("Far West") to Hydro-Dynamics, Inc., and Hydro-Dynamics of Colorado (collectively "Hydro-Dynamics"). *Id.* at 67. When Hydro-Dynamics defaulted on the loan, Far West obtained a default judgment against Meyer, and Meyer subsequently filed for bankruptcy. *Id.* Prior to Meyer's filing for bankruptcy, Far West transferred the loan through two successive banks to the Resolution Trust Corporation ("RTC") as receiver for the banks. *Id.* RTC filed an adversary action in Meyer's bankruptcy, seeking to have the debt declared non-dischargeable. *Id.* RTC transferred the debt to the Federal Deposit Insurance Corporation ("FDIC"). *Id.* Meyer argued that the assignment of the loan barred RTC from seeking non-dischargeability because Meyer never misled RTC. The Seventh Circuit rejected this argument, noting that it "betray[ed] a fundamental misunderstanding of contract law . . . . [T]he very reason that the institution of

assignment exists is to enable Creditor to transfer its rights against Debtor (Meyer) to Assignee (Federal Bank)."**3**  *Id.* at 70.

Pazdzierz cites two bankruptcy court decisions as support for his argument that § 523(a)(2) does not allow assignees to pursue non-dischargeability.  In *Cadlerock Joint Venture, L.P. v. Pittard (In re Pittard)*, 358 B.R. 457 (Bankr. N.D. Ga. 2006), Merrill Lynch obtained a pre-petition judgment against Pittard and his company that expressly reserved a decision on the count of Merrill Lynch's complaint that alleged Pittard made fraudulent statements and omissions in connection with Pittard Machinery Company's application for a loan.  *Id.* at 459.  Merrill Lynch assigned the judgment to Cadle Company, which then assigned the claim to Cadlerock Joint Venture, L.P. ("Cadlerock").  *Id.* at 459.  When Pittard filed for bankruptcy, Cadlerock objected to the discharge of the debt under § 523(a)(2), asserting the loan was fraudulently obtained. *Id*.  The court concluded that claims of fraud could not be assigned under Georgia law and therefore Cadlerock could not pursue non-dischargeability on this basis.  *Id.* at 460–61.  However, this decision was not based on § 523(a)(2)(B)(iii), but on Georgia law prohibiting the assignment of "injuries arising from fraud to the assignor" and the court's characterization of the claim as "an action based on injuries arising from fraud," and is thus distinguishable.  *Id.* at 461.  As discussed, the Michigan courts would not treat the instant assignment as one inviting an action arising from fraud.  Pazdzierz also cites *Depue v. Cox (In re Cox)*, 462 B.R. 746 (Bankr. D. Idaho 2011), where the plaintiffs sought non-dischargeability based on the theory that the debtors' false representations to a third-party bank prompted the bank to refuse to release the plaintiffs

---

**3**District courts that have considered this issue have held similarly.  The Bankruptcy Court for the Northern District of Illinois held that under § 523(a)(2), the assignee steps into the shoes of the assignor and "the inquiry of whether a creditor justifiably relied on Debtor's alleged misrepresentations is focused on the moment in time when that creditor extended the funds to Debtor."  *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R.496, 508 (Bankr. N.D. Ill. 2002) (citing *McClellan v. Cantrell*, 217 F.3d 890, 896 (7th Cir. 2000) (Ripple, J., concurring) ("The language 'obtained by' clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property.")); *see also Turbo Aleae Invs., Inc. v. Borschow (In re Borschow)*, 467 B.R. 410, 419–21 (W.D. Tex. 2012); *Bertuca v. Flores (In re Flores)*, No. 09-01009, 2010 WL 3811920, at *3 (Bankr. S.D. Tex., Sept. 22, 2010); *Green Point Funding, Inc. v. Jacobs (In re Jacobs)*, No. 03-84455, 2007 WL 4163414, at *10–11 (Bankr. E.D.N.Y., Nov. 21, 2007).

from their personal guarantees. *Id.* at 756–58. *Cox* too is inapposite; the court rejected plaintiffs' claims as subrogees and did not discuss § 523(a)(2)(B)(iii).

The Sixth Circuit has not addressed whether an assignee may stand in place of the original creditor to seek non-dischargeability under § 523(a)(2)(B). Pazdzierz advances no compelling reason we should not join the Seventh and Ninth Circuits in concluding that assignees may seek non-dischargeability under § 523(a)(2). Although the assignment in the instant case did not precede the bankruptcy petition as in *Boyajian* and *Meyer*, we do not find this difference significant where there is no question that First American received consideration as part of the settlement. Finding *Boyajian* and *Meyer* persuasive, we affirm the district court's determination that First American can seek non-dischargeability under § 523(a)(2) and remand to the bankruptcy court for further proceedings under § 523(a)(2)(B), expressing no opinion whether First American is able to present sufficient evidence to establish non-dischargeability.

## IV.

First American conceded at argument that it is unnecessary to reach its cross-appeal if we affirm the district court's ruling that it can proceed under the notes. In other words, First American asserts no broader rights as subrogee than as assignee. We therefore do not reach the cross-appeal.

## V.

For the foregoing reasons, we AFFIRM the district court's reversal of the bankruptcy court and REMAND to the bankruptcy court for proceedings consistent with this opinion.